Filed 1/13/17; on transfer from Supreme Court

**CERTIFIED FOR PARTIAL PUBLICATION**[*]


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ANTONIO OCHOA,<br><br>    Defendant and Appellant. | A137763<br><br>(Contra Costa County<br>Super. Ct. No. 51210673) |


Defendant Jose Antonio Ochoa (defendant) appeals from the judgment following his conviction for various offenses, including threatening public officers. We affirmed the judgment in an opinion filed March 25, 2015, and the California Supreme Court granted review and deferred further action pending disposition of a related issue in *People v. Sanchez*, S216681. On June 30, 2016, the Court filed its decision in that case (see *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*)) and the Court transferred the present case back to this court for reconsideration in light of the *Sanchez* decision. (See Cal. Rules of Court, Rule 8.528(d).) Having analyzed the testimony of the gang expert introduced by the prosecution under both the confrontation clause of the United States Constitution and California's hearsay rule, we find no prejudicial error and again affirm.

PROCEDURAL BACKGROUND

On June 22, 2012, the Grand Jury of the County of Contra Costa returned an indictment accusing defendant of first degree residential burglary (Pen. Code, §§ 459,

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 2. All subsequent rules references are to the California Rules of Court.

1

460, subd. (a);[1] count one), during which nonparticipants in the robbery were present (§ 667.5, subd. (c)(21)); attempted first degree robbery (§§ 211, 212.5, subd. (a), 664; count two); threatening public officers and employees (§ 71; count three); and resisting an executive officer (§ 69; counts four and five). As to counts three to five, the indictment alleged the offenses were committed for the benefit of criminal street gangs, specifically the Sureños and the South Side Locos (SSL) (§ 186.22, subd. (b)(1)). The indictment also alleged defendant had a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12) and a prior serious felony conviction (§ 667, subd. (a)(1)).

In December 2012, a jury found defendant guilty on counts one, two, three, and five. The jury found true the enhancements to counts one and three. The jury did not reach a verdict on count four or the enhancement to count five; that count and enhancement were dismissed on the prosecution's motion. The trial court found true the prior conviction allegations.

In January 2013, the trial court sentenced defendant to state prison for a total term of 11 years and four months. This appeal followed.

As noted previously, we affirmed the judgment and the California Supreme Court granted review and deferred further action in the case. On September 21, 2016, the Court transferred the present case back to this court for reconsideration in light of the *Sanchez* decision. (*Sanchez, supra*, 63 Cal.4th 665.) No party filed the supplemental brief permitted under Rule 8.200(b).

FACTUAL BACKGROUND

In May 2012, Raul Moreno Chavez (Moreno) and Antonio Sandoval Navarro (Sandoval) (jointly, victims) lived in an apartment on Detroit Avenue in Concord. The victims, through Spanish interpreters, testified that defendant and two other people loudly knocked on their apartment door in the early morning hours on May 19. Moreno opened the door; Sandoval called the police. Sandoval heard the men, speaking in English, say they had a knife or pistol. Moreno exited the apartment and two of the men, one of

---

[1] All further undesignated section references are to the Penal Code.

whom was defendant, entered the apartment and said the victims would be killed if they did not give the assailants what they wanted. Defendant took Sandoval's cell phone and wallet, and then threw both on the floor. Subsequently, the men went outside, where defendant was detained after Sandoval identified him to the police.[2]

At around 3 a.m. on May 19, 2012, Concord Police Officers Carl Cruz and David Greenfield responded to the area of the victims' apartment. Officer Cruz encountered defendant in the apartment complex's central "quad." The officer asked to speak to defendant, and defendant responded with verbal aggression. Officer Cruz noticed Sandoval coming down stairs nearby, and he went to speak with Sandoval while Officer Greenfield stayed with defendant.[3] Sandoval identified defendant as the man who had entered his apartment.

Officer Greenfield tried to calm defendant down. The officer got defendant to sit down, but he remained belligerent. He told Officer Greenfield, "Fuck you. You know who you're fucking with? I'm a validated Sureño. I run this County." Defendant also told the officer, "I'll fuck you up." While this was happening, Officer Cruz was speaking to Sandoval within earshot, and defendant was also yelling over his shoulder to them in Spanish.

Subsequently, a struggle ensued when defendant attempted to stand up: Officer Greenfield pushed him back down, defendant shoved the officer, and the officer struggled to restrain defendant. Officer Cruz offered his assistance, and they managed to handcuff defendant after Officer Greenfield applied a "carotid control hold," which caused defendant to lose consciousness for about five seconds. Defendant was still aggressive when he regained consciousness, yelling and "kicking and flailing around." Because the hold was employed, the officers summoned medical assistance, per departmental policy. Defendant was taken to the hospital in an ambulance.

---

[2] Moreno testified he left the apartment and had tense interactions with defendant and his companions outside the apartment. His testimony was unclear and it is unnecessary to attempt to summarize it for purposes of this decision.

[3] The officers referred to Sandoval as Navarro in their testimony, but Sandoval testified he preferred to go by the last name Sandoval.

At the hospital, Officer Greenfield joined Officer Cruz, who was already with defendant. Defendant spoke to Officer Cruz in a threatening manner and referred to his ties to La Eme (also known as the Mexican Mafia), a prison gang. Officer Cruz knew defendant was a Sureño affiliated with the local SSL gang. Defendant told Officer Greenfield, "If you weren't such a pussy and had to jump me, I would have fucked you up. I can't wait to see you again when you're off-duty. I'll get you. You ain't shit without your badge and gun."

The prosecution presented testimony from another Concord police officer who had contact with defendant in 2010. Defendant was photographed, and he asked if he could "represent" during the photographs; when he was told he could, he "flashed common SSL gang . . . signs." Another officer testified he had contact with defendant in 2011 and defendant identified himself as an "SSL Sureño." Yet another officer testified having contact with defendant in February 2012; he was in the company of at least one other SSL gang member and was wearing blue clothing (which is associated with the Sureños).

The prosecution's gang expert, Corporal Michael Kindorf, testified regarding the history and activities of La Eme, the Sureños, and the SSL. They are all affiliated gangs, with La Eme occupying "Tier I," the Sureños "Tier II," and the SSL "Tier III." At the time of the present offenses, the SSL claimed as its territory "the southern district of the three policing districts" in Concord, which is where the present offenses occurred. Kindorf testified that defendant has numerous tattoos that demonstrate his affiliation with the Sureños and the SSL. Kindorf also identified various specific people as members of the SSL. Finally, Kindorf was presented with hypotheticals that mirrored the circumstances of the incident shown at trial, and he explained how the hypothesized conduct would benefit a gang.

DISCUSSION

I.    *There Was No Prejudicial Error Under the Confrontation Clause or Under State Hearsay Law in The Admission of Gang Expert Testimony*

Defendant contends the testimony of the prosecution's gang expert, Corporal Kindorf, violated his confrontation rights under the Sixth Amendment to the United

4

States Constitution.  In particular, he argues the expert relied on testimonial hearsay to support the prosecution's showing that SSL members engaged in a "pattern of criminal gang activity," as required to sustain the gang enhancement to count three.  (§ 186.22, subds. (b), (e), & (f).)[4]  Additionally, in light of the decision in *Sanchez*, *supra*, 63 Cal.4th 665, we consider whether admission of aspects of the gang expert's testimony violated state hearsay law.

A.    *Background*

"Section 186.22, subdivision (b)(1) imposes additional punishment when a defendant commits a felony for the benefit of, at the direction of, or in association with a criminal street gang.  To establish that a group is a criminal street gang within the meaning of the statute, the People must prove: (1) the group is an ongoing association of three or more persons sharing a common name, identifying sign, or symbol; (2) one of the group's primary activities is the commission of one or more statutorily enumerated criminal offenses; and (3) the group's members must engage in, or have engaged in, a pattern of criminal gang activity." (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1457 (*Duran*).)  "A 'pattern of criminal gang activity' is defined as gang members' individual or collective 'commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more' enumerated 'predicate offenses' during a statutorily defined time period. [Citations.]  The predicate offenses must have been committed on separate occasions, or by two or more persons. [Citations.]  The charged crime may serve as a predicate offense [citations], as can 'evidence of the offense with which the defendant is charged and proof of another offense committed on the same occasion by a fellow gang member.' " (*Ibid.*)[5]  The prosecution

_____

[4] Because we ultimately conclude defendant has not shown there was reversible error based on the section 186.22 showing as to the SSL gang, we need not and do not consider whether the judgment could also be affirmed based on the showing as to the Sureño gang.
[5] Subdivision (e) of section 186.22 states: "As used in this chapter, 'pattern of criminal gang activity' means the commission of, attempted commission of, or solicitation of two or more of the following offenses, provided at least one of those offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years

5

need not prove, however, that the predicate offenses used to establish a pattern of criminal activity were gang-related. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621–622, disapproved on another ground in *Sanchez, supra*, 63 Cal.4th at p. 686, fn. 13 (*Gardeley*).)

In the present case, the prosecution submitted into evidence records of convictions of various persons that Corporal Kindorf opined were SSL members. In her closing, the prosecutor referenced convictions for offenses committed between 2008 and 2012 by various persons. Defendant's argument on appeal regarding the proof of the predicate offenses is that "there was considerable dependency on hearsay evidence garnered through expert testimony for the proposition that certain [persons] were members or were acting as such at the time the specified criminal acts were committed."

At the outset, we note defendant is mistaken in asserting the prosecution was required to prove the SSL members were "acting as such" in committing the predicate offenses. (*Gardeley*, *supra*, 14 Cal.4th at pp. 621–622.) To establish the specified individuals were SSL members at the time of the offenses, the gang expert Corporal Kindorf testified as follows. He has been an officer for 17 years and spent five years (1999-2004) in a patrol division "focused mainly on street level gang crimes and narcotics crimes." In that assignment he "contacted gang members . . . on a daily basis." He was a detective in the street gang unit from 2009-2012. In that capacity he investigated gang crimes, registered gang members, conducted probation and parole searches, and executed search warrants. In addition to interviewing gang members, he has interviewed former gang members, gang members on probation, and relatives of gang members. He has spoken to other officers about gang activity in Concord and, as a detective, attended bi-monthly meetings in which other detectives, parole and probation officers, and jail deputies shared information.

Corporal Kindorf also testified about how to recognize gang members by their dress, tattoos, and hand gestures, and noted that some people "brag" about their gang

after a prior offense, and the offenses are committed on separate occasions, or by two or more persons. . . ."

membership, including to police officers. With respect to defendant, Kindorf testified he had "personally" seen defendant's tattoos and he explained how the numerous tattoos were indicative of membership in the Sureños and the SSL. The initials SSL appeared at least four times; Kindorf had seen one of the "SSL" tattoos on eight other SSL gang members. In addition to the gang expert's testimony about defendant's tattoos, another officer testified defendant flashed SSL gang signs when photographed and another officer testified defendant identified himself as an "SSL Sureño."

Kindorf also testified regarding at least twelve other individuals who he opined were members or associates of the SSL or the Sureños. As to many of the individuals, he reported they had *admitted* being members of the SSL and/or the Sureños; sometimes it was unclear to whom the admissions were made—whether to Kindorf or to another officer in unidentified circumstances—and other times it was clear Kindorf was relating admissions that appeared in police reports. In a few instances, he identified photographs of individuals and opined that tattoos, clothing, or gestures therein demonstrated membership in the SSL and/or the Sureños. Kindorf also asserted that two individuals (Robert Ortega Gomez and Sandra Gomez) were SSL members without explaining or relating the basis for the assertion.

In her closing argument, the prosecutor referenced convictions for offenses committed between 2008 and 2012 by various persons who had been identified as gang members by Corporal Kindorf. The convictions included: (1) a conviction of Robert Gomez Ortega (aka Robert Ortega Gomez) for a grand theft committed in September 2008; (2) convictions of defendant and Gomez for a robbery committed in July 2010; (3) a conviction of Adrian Navarro for being a felon in possession of a firearm in February 2012; (4) a conviction of Francisco Cano for a robbery in May 2009; (5) convictions of Christian Hernandez, Raul Valle, and Cruz Jacobo for a carjacking committed in March

2010; and (6) a conviction of Richard Andrew Lopez for a carjacking committed in May 2005.[6]

        B.      *Defendant Has Not Shown Prejudicial Error Under the Confrontation Clause*

              1.      *Under* Sanchez, *Some of the Expert's Testimony May Have Related Testimonial Hearsay*

As explained previously, Corporal Kindorf told the jury that certain individuals had admitted they were SSL gang members. Under *Sanchez*, *supra*, 63 Cal.4th 665, those admissions were out-of-court statements admitted for the truth of the matters asserted, and thus hearsay. As *Sanchez* explained, "[w]hen an expert relies on hearsay to provide case-specific facts, considers the statements as true, and relates them to the jury as a reliable basis for the expert's opinion, it cannot logically be asserted that the hearsay content is not offered for its truth. In such a case, 'the validity of [the expert's] opinion ultimately turn[s] on the truth' [citation] of the hearsay statement." (*Sanchez*, at pp. 682–683.)

Because the challenged testimony was hearsay under *Sanchez*, the critical question under the confrontation clause is whether the out-of-court statements were "testimonial," as required to implicate the clause under *Crawford v. Washington* (2004) 541 U.S. 36, 51–52, 68 (*Crawford*). (*Sanchez*, *supra*, 63 Cal.4th at pp. 685–686; see also *id.* at p. 685 ["only when a prosecution expert relies upon, and relates as true, a *testimonial* statement would the fact asserted as true have to be independently proven to satisfy the Sixth Amendment"].) The *Sanchez* decision surveyed the substantial body of case law regarding the proper formulation of "testimonial" and summarized the concept as follows: "Testimonial statements are those made primarily to memorialize facts relating to past criminal activity, which could be used like trial testimony. Nontestimonial

---

[6] Defendant does not challenge the adequacy of proof of the predicate offenses or contend the offenses failed to satisfy the requirements of section 186.22, subdivision (e) for proof of a "pattern of criminal gang activity," other than proof the perpetrators were SSL gang members.

statements are those whose primary purpose is to deal with an ongoing emergency or some other purpose unrelated to preserving facts for later use at trial." (*Sanchez*, at p. 689.) Also, in order to be considered testimonial, "the statement must be made with some degree of formality or solemnity." (*People v. Dungo* (2012) 55 Cal.4th 608, 619 (*Dungo*); see also *Sanchez*, at pp. 692–694.)

In *Sanchez*, *supra*, 63 Cal.4th 665, the Supreme Court considered whether several different categories of out-of-court statements were testimonial. First, the Court considered statements in written police reports referenced by the gang expert in testifying about the defendant's prior police contacts. (*Id.* at p. 694.) *Sanchez* concluded the statements at issue in the reports were testimonial, reasoning that, although the reports were not as formal as an affidavit, they "relate[d] hearsay information gathered during an official investigation of a completed crime." (*Id.* at p. 694.) Second, *Sanchez* considered a "STEP" (Street Terrorism Enforcement and Preservation Act) notice the gang expert referenced in opining the defendant was a gang member. (*Id*. at p. 696.) A STEP notice " 'informs suspected individuals that law enforcement believes they associate with a criminal street gang.' " (*Ibid.*) *Sanchez* concluded the statements in the portion of the STEP notice at issue were testimonial because the notice was a formal record of information about the subject of the notice, including "biographical information, whom he was with, and what statements he made." (*Sanchez*, at p. 696.) The purpose of the record was "to establish facts to be later used against him or his companions at trial" and "to prove that the recipient had actually been made aware that he was associating with a criminal street gang and that he might receive an enhanced punishment should he commit a future crime with members of that gang." (*Ibid.*) The Court also emphasized the formality of the document, which "is part of an official police form containing the officer's sworn attestation that he issued the notice on a given date and that it accurately reflected the attendant circumstances, including defendant's statements." (*Id.* at pp. 696-697.) Finally, *Sanchez* concluded that a field identification card describing a police contact with the defendant would be "akin" to a police report and, thus, testimonial "[i]f

the card was produced in the course of an ongoing criminal investigation." (*Id.* at p. 697.)

In the present case, we are unable to compare the out-of-court admissions to gang membership related to the jury by Corporal Kindorf to the out-of-court statements considered in *Sanchez*, because defendant failed to object to the expert's testimony on the ground it violated his right to confrontation, resulting in an undeveloped record. Had defendant lodged contemporaneous objections during trial, the People, as the proponent of the evidence, would have had the burden to show the challenged testimony did not relate testimonial hearsay. (*United States v. Jackson* (5th Cir. 2011) 636 F.3d 687, 695 ["the government bears the burden of defeating [defendant's] properly raised Confrontation Clause objection by establishing that its evidence is nontestimonial"]; see also *Idaho v. Wright* (1990) 497 U.S. 805, 816 [the state has burden of proof regarding admissibility under confrontation clause]; *People v. Livaditis* (1992) 2 Cal.4th 759, 778 [" 'if a hearsay objection is properly made, the burden shifts to the party offering the hearsay to lay a proper foundation for its admissibility under an exception to the hearsay rule' "]; *People v. Schader* (1969) 71 Cal.2d 761, 772, fn. 4 ["after the defendant has raised [an evidentiary objection], the burden is on the People to establish admissibility"].)

However, as no such contemporaneous objections were lodged, we cannot simply assume the admissions to gang membership related by Corporal Kindorf were testimonial hearsay.[7] (See *People v. Giordano* (2007) 42 Cal.4th 644, 666 [" ' " error must be

_____

[7] The trial in the present case occurred after the filing earlier in 2012 of several important decisions that further explained the meaning of "testimonial hearsay" for confrontation clause purposes, including *Dungo*, *supra*, 55 Cal.4th 608; *People v. Lopez* (2012) 55 Cal.4th 569; and *Williams v. Illinois* (2012) 567 U.S. ____, 132 S.Ct. 2221. Defendant argues any objections during Corporal Kindorf's testimony would have been futile because the trial court denied a motion in limine based on the confrontation clause. In that motion, defendant cited *Crawford*, *supra*, 541 U.S. 36, and objected to the admission of "any statements made by . . . any other civilian witness to any police officer or other member of law enforcement unless and until such witness actually testifies at trial." However, the motion was denied "without prejudice" because it was unclear at the time which witnesses would testify. The prosecutor acknowledged some statements by witnesses might not be admissible under certain scenarios and suggested it "might be

10

affirmatively shown" ' "].)  To the extent the admissions related by Kindorf were made in the course of informal interactions between the individuals and Kindorf or other officers, the admissions were not *testimonial* hearsay.  On that issue, we agree with the reasoning of *People v. Valadez* (2013) 220 Cal.App.4th 16 (*Valadez*), which retains its validity after *Sanchez*, *supra*, 63 Cal.4th 665.  *Valadez* rejected a similar contention that statements elicited by a gang expert in past conversations with gang members and police officers were testimonial, reasoning, "nothing in the circumstances of [the expert's] interactions with gang members and other officers objectively indicates the primary purpose of [the expert's] questioning was to target [the defendants] or any other individuals or crimes for investigation or to establish past facts for a later criminal prosecution. . . .  To the contrary, he merely educated himself about the history of gangs in an area in which he was assigned as a gang officer, which would help him better understand and perhaps more effectively investigate gang activity.  Like the mixed motives of officers and witnesses during ongoing emergencies, that he used this general information to testify as a gang expert at trial does not mean his *primary purpose* in obtaining this information was to use it against [the defendants] in a later criminal prosecution.  Day in and day out such information would be useful to the police as part of their general community policing responsibilities quite separate from any use in some unspecified criminal prosecution." (*Valadez*, *supra*, 220 Cal.App.4th at p. 36; see also *People v. Hill* (2011) 191 Cal.App.4th 1104, 1135–1136.)

To summarize, it is possible the admissions of gang membership related to the jury by Corporal Kindorf came from police reports or other records and, thus, may have been testimonial hearsay under *Sanchez*.  However, due to defendant's failure to object, the

---

best" to handle the issue "as the evidence comes in" and defense counsel responded, "Yes, I'm fine with waiting as the evidence comes in."  Thus, defendant did not preserve a standing objection based on the confrontation clause and there is no basis to conclude contemporaneous objections would have been futile.  Defendant also points out he objected on hearsay grounds to admission of the conviction packets for offenses used to prove SSL is a criminal street gang.  However, those objections cannot cure his failure to object during Corporal Kindorf's earlier testimony.

record is not clear enough for this court to conclude which portions of the expert's testimony involved testimonial hearsay. Accordingly, defendant has not demonstrated a violation of the confrontation clause. In any event, as explained below, any violations of the confrontation clause were harmless.

> ### 2. *Any Violations of the Confrontation Clause Were Harmless Beyond a Reasonable Doubt*

Even if this court assumes that Corporal Kindorf was relating testimonial hearsay from police reports or other records every time he said an individual had admitted gang membership, admission of such testimony was harmless beyond a reasonable doubt.[8]

At the outset, we note that evidence of defendant's own conduct was sufficient to establish the "pattern of criminal gang activity" required to support the section 186.22 enhancement. As explained previously, proof of such a pattern requires a showing of the commission of *two* covered offenses by SSL members, either on separate occasions or by two or more persons. (§ 186.22, subd. (e); *Duran*, *supra*, 97 Cal.App.4th at p. 1457.) Because there was overwhelming evidence defendant was an SSL member (even ignoring his admission to that effect), his offenses could qualify as predicate offenses for purposes of the enhancement. For one, either the charged burglary or the charged attempted robbery could serve as a predicate offense. (§ 186.22, subd. (e); *Duran*, at p. 1457.) Additionally, the prosecution showed that defendant was convicted of a robbery in July 2010. That is a second predicate offense committed on a separate occasion from the May 2012 offenses in the present case. (*People v. Tran* (2011) 51 Cal.4th 1040, 1048 [a predicate offense may also "be established by proof of an offense the defendant committed on a separate occasion"].)

Furthermore, at least as to three of the other purported SSL gang members there was clear evidence of gang membership untainted by a confrontation clause violation.

---

[8] We also assume for purposes of our analysis that any admissions of gang membership were in police reports documenting "an official investigation of a completed crime" or in other official documents that would be considered to contain testimonial statements under *Sanchez*. (*Sanchez*, *supra*, 63 Cal.4th at p. 694.)

First, the prosecution showed Robert Gomez Ortega committed grand theft in September 2008 and robbery in July 2010 (as defendant's co-participant). Kindorf testified he knew Gomez and he believed Gomez was "currently one of the lead members" of the SSL. He explained he was "familiar with several cases where [Gomez has] been involved as a primary actor," and Kindorf opined Gomez's sister was "actually the only female that I know that's also a member of the SSL." Kindorf made no reference to out-of-court statements by Gomez or others. Thus, the evidence Gomez was an SSL member who committed a grand theft in September 2008 and a robbery in July 2010 was untainted by any confrontation clause violation.

The same was true of Francisco Cano, who was convicted of a robbery in May 2009. Kindorf testified he knew Cano and Cano "definitely was a member of the" SSL. The expert explained he knew that because he investigated the 2009 robbery and "at the time of the arrest, he admitted being an SSL gang member." Kindorf also testified he had had personal contact with Cano at Cano's home during probation checks. The expert continued, "[Cano] states now that he is no longer a member, that he has dropped out, he's married and has a child. . . . And he says he is no longer a [SSL] gang member." Even if Cano's admission at the time of his arrest was testimonial hearsay, we are aware of no basis to conclude his admissions to Kindorf during probation checks were testimonial hearsay. Accordingly, the robbery in May 2009 was another predicate offense by an SSL gang member shown by evidence admissible under the confrontation clause.

Finally, we turn to the evidence regarding Adrian Navarro, who was convicted of being a felon in possession of a firearm in February 2012. Corporal Kindorf related to the jury arguably testimonial hearsay that Navarro had admitted being a Sureño in police reports. The expert also testified Navarro had Sureño tattoos and dress, but he did not testify regarding tattoos or dress specifically associated with the SSL. But Kindorf also pointed out that Navarro's recent gun possession conviction was found to be an SSL-related offense. The records placed in evidence by the prosecution regarding that offense show Navarro pled no contest to the firearm possession charge, which included an

13

enhancement allegation the offense was committed "for the benefit and at the direction of, and in association with Surenos and SSL (South Side Locos), a criminal street gang, and with specific intent to promote, further, and assist in criminal conduct by gang members." That plea was powerful evidence Navarro was an SSL member.[9]

For the reasons above, any violations of the confrontation clause in the testimony of Corporal Kindorf were harmless beyond a reasonable doubt.

### C.     *Any Violations of State Hearsay Law Were Harmless*

Defendant did not object at trial to admission of the challenged testimony on hearsay grounds or argue on appeal the testimony should have been excluded on the basis of state hearsay law. Following the decision in *Sanchez*, *supra*, 63 Cal.4th 665, and transfer of this matter back to this court, defendant did not file a supplemental brief contending that admission of the challenged testimony violated hearsay law as described in *Sanchez*. Accordingly, defendant has failed to present a claim for reversal based on violation of state hearsay law. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.) Nevertheless, we recognize the Supreme Court has directed this court to reconsider our prior opinion in light of *Sanchez*, and there is an arguable claim that, under *Sanchez*, admission of some of the expert's testimony at issue violated California hearsay law. Thus, in order to fully comply with the Supreme Court's directive and to forestall a petition for writ of habeas corpus based on a claim of ineffective assistance of appellate

---

[9] Defendant does not contend the trial court erred in admitting the record of Navarro's conviction. We need not and do not consider whether the fact of Navarro's no contest plea was testimonial. (See Crawford, supra, 541 U.S. at pp. 64–65 [plea allocutions are testimonial].) It is less clear whether there was evidence untainted by a confrontation clause violation as to the other gang members involved in the other proposed predicate offenses. Corporal Kindorf said his opinions that Christian Hernandez, Raul Valle, and Cruz Jacobo were SSL members were based on admissions to gang membership apparently appearing in police reports and other records, as well as their convictions for committing the March 2010 carjacking, which was gang related. However, the records of that offense presented by the prosecution show the defendants were alleged to be acting for the benefit of the Sureño gang, not the SSL. The remaining proposed predicate offense was a conviction of Richard Andrew Lopez for a carjacking committed in May 2005, but it does not appear Kindorf testified Lopez was an SSL gang member.

14

counsel, we consider whether admission of aspects of Corporal Kindorf's testimony was prejudicial error.

As explained in *People v. Stamps* (2016) 3 Cal.App.5th 988 (*Stamps*), *Sanchez* announced a "paradigm shift" regarding how out-of-court statements used as expert testimony basis evidence are treated under California hearsay law. (*Id.* at p. 995.) As *Stamps* explains, "Incorporated within the *Sanchez* rule is what appears to be a new litmus test for admissibility of expert testimony incorporating hearsay as the basis for the expert's opinion: it depends on whether the matter the prosecution seeks to elicit is 'case-specific hearsay' or, instead, part of the 'general background information' acquired by the expert through out-of-court statements as part of the development of his or her expertise." (*Stamps*, at pp. 995–996.)

It seems clear the hearsay at issue in the present case—out-of-court statements by individuals admitting being members of the SSL—are case-specific hearsay rather than general background information about the SSL. *Sanchez* gave the following as one in a series of examples of the distinction: "That an associate of the defendant had a diamond tattooed on his arm would be a case-specific fact that could be established by a witness who saw the tattoo, or by an authenticated photograph. That the diamond is a symbol adopted by a given street gang would be background information about which a gang expert could testify. The expert could also be allowed to give an opinion that the presence of a diamond tattoo shows the person belongs to the gang." (*Sanchez*, *supra*, 63 Cal.4th at p. 677.) By analogy, that someone admitted being a gang member is also a case-specific fact.

Under *Sanchez*, if an expert seeks to testify to an out-of-court statement to establish a case-specific fact and no hearsay exception applies to the statement, the statement is inadmissible hearsay that the expert may not relate to the jury, regardless of whether the hearsay is testimonial for purposes of the confrontation clause. (*Sanchez*, *supra*, 63 Cal.4th at p. 685; see also *Stamps*, *supra*, 3 Cal.App.5th at p. 996 ["If it is a case-specific fact and the witness has no personal knowledge of it, if no hearsay exception applies, and if the expert treats the fact as true, the expert simply may not

15

testify about it."].)  Thus, when Corporal Kindorf testified various persons admitted to being members of the SSL, he related hearsay to prove case-specific facts.  Under *Sanchez*, in the absence of a valid exception, the testimony was inadmissible as a matter of state hearsay law.

Although Corporal Kindorf arguably related inadmissible hearsay to the jury to prove certain individuals were members of the SSL, it is not reasonably probable defendant was prejudiced by admission of the testimony.  (*Stamps*, *supra*, 3 Cal.App.5th at p. 997 ["We review the erroneous admission of expert testimony under the state standard of prejudice."].)  As explained previously, defendant's conduct alone was sufficient to establish the "pattern of criminal gang activity" required to support the section 186.22 enhancement.  Moreover, Kindorf related no hearsay to the jury to support his opinion Robert Gomez Ortega was a member of the SSL, and Adrian Navarro's affiliation with the SSL was shown by his plea of no contest to being a felon in possession of a firearm for the benefit of the SSL.[10]  Any error under state hearsay law as interpreted by *Sanchez* was harmless.

II.     *The Gang Enhancement to Count Three is Supported by Substantial Evidence*

Defendant was convicted in count three of threatening a public officer.  (§ 71.)  The evidence showed that, prior to the start of their physical conflict, defendant told Officer Greenfield, "You know who you're fucking with?  I'm a validated Sureño."  He also told the officer, "I'll fuck you up."  The jury found true an allegation that the count three offense was committed for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1).)  On appeal, defendant contends the allegation is not supported by substantial evidence.

_____

[10] As noted previously, defendant does not contend the trial court erred in admitting the record of Navarro's conviction.  It appears the record was admissible under Evidence Code section 452.5.  (See *Duran*, *supra*, 97 Cal.App.4th at p. 1461 ["we conclude that Evidence Code section 452.5 states a new hearsay exception for certified official records of conviction, which may be offered to prove not only the fact of a conviction, but the commission of the underlying offense"].)  We need not and do not consider whether Francisco Cano's admission to Kindorf that he had been a member of the SSL was admissible as a declaration against interest.

16

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence."  (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60 (*Albillar*).)

To subject a defendant to a gang enhancement under section 186.22, subdivision (b)(1), the prosecution must prove both the underlying crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and that the defendant possessed "the specific intent to promote, further, or assist in any criminal conduct by gang members."  (§ 186.22, subd. (b)(1); *Albillar*, *supra*, 51 Cal.4th at pp. 59-60.)  The "gang enhancement may be applied to a lone actor."  (*People v. Rios* (2013) 222 Cal.App.4th 542, 564.)

In the present case, gang expert Corporal Kindorf described the history and culture of the SSL gang and the broader gangs with which it is affiliated.  Responding to a hypothetical from the prosecutor, he opined, among other things, that threats such as those directed at Officer Greenfield by defendant communicated to the victims and any witnesses that the person making the threat or fellow gang members could retaliate if there was any cooperation with police.  (See *Albillar*, *supra*, 51 Cal.4th at p. 63 [approving use of hypothetical question to expert regarding gang benefit].)  The jury could also reasonably infer that defendant's threats would benefit the SSL and its parent Sureño gang by demonstrating a fearlessness in the face of authority.  Such violent resistance would, in the expert's words, "elevate that level of intimidation and despair in the neighborhood."  The jury's finding of gang-relatedness is further supported by the circumstances that defendant specifically called out a gang name and committed his offense in gang territory.  (Cf. *People v. Ochoa* (2009) 179 Cal.App.4th 650, 662 ["Defendant did not call out a gang name, display gang signs, wear gang clothing, or

17

engage in gang graffiti while committing the instant offenses."]; *ibid.* ["There was no evidence the crimes were committed in . . . gang territory . . ."].)

Defendant argues there is insufficient evidence defendant's threats were for the benefit of the SSL, because "there was no one else around besides" the police officers and Sandoval, one of the victims. However, the jury reasonably could have inferred that defendant's threats would serve a gang-related purpose even if only the officers and Sandoval heard them. Moreover, because the incident was loud and occurred in a central and public area of an apartment complex, there was a reasonable possibility that other residents would witness the incident. Defendant also argues, "what is lacking here is some sort of proof of actual benefit," because Sandoval did not refuse to testify and the officers were not intimidated. He fails, however, to cite any authority such proof is needed; the gang enhancement refers to conduct "for the benefit of" a gang (§ 186.22, subd. (b)(1)), not conduct that "benefitted" a gang. In any event, Corporal Kindorf's testimony provided a basis for the jury to infer that defendant's conduct benefitted the SSL overall in the manner the expert described, regardless of the effect of defendant's threats on Sandoval and the officers.[11]

We conclude Corporal Kindorf's testimony regarding how conduct such as defendant's could benefit the SSL was sufficient to raise an inference the conduct was "committed for the benefit of" the SSL within the meaning of section 186.22, subd. (b)(1). (*Albillar*, *supra*, 51 Cal.4th at p. 63.)

## DISPOSITION

The judgment is affirmed.

---

[11] The *heading* to this argument in defendant's opening brief suggests the gang expert relied on the fact that defendant yelled in Spanish as a basis for his conclusion the offense was for the benefit of the SSL. Defendant cites to no portion of the expert's testimony in support of that assertion. In any event, the fact that defendant yelled in Spanish supports an inference defendant sought to intimidate Sandoval, whose primary language was Spanish. Corporal Kindorf testified such witness intimidation "definitely strengthens the hold that a gang has on a community."

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

(A137763)

Superior Court of Contra Costa County, No. 51210673, Hon. Brian Haynes, Judge.

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Rene A. Chacon and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Respondent.