Filed 2/23/21  P. v. Gonzales CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089237 |
| Plaintiff and Respondent, | (Super. Ct. No. 99F02522) |
| v. | |
| RONALD GONZALES, | |
| Defendant and Appellant. | |

Defendant Ronald Gonzales appeals from a trial court order extending his civil commitment under Penal Code section 1026.5,[1] after being found not guilty by reason of insanity.  Defendant contends the trial court erred by improperly admitting case-specific testimonial hearsay through the testimony of two expert psychiatric witnesses.  We conclude defendant forfeited this claim.  Anticipating this conclusion, defendant also

---

[1]     Undesignated statutory references are to the Penal Code.

1

contends counsel was ineffective for failing to object. The record reflects counsel had a reasonable tactical purpose; accordingly, counsel was not ineffective in not objecting to the testimony. We will affirm the order.

BACKGROUND[2]

Defendant has a long history of schizophrenia, polysubstance dependence, and antisocial personality disorder. In 1999, defendant was found not guilty by reason of insanity (NGI) of assault with a deadly weapon (§ 245, subd. (a)) and the trial court committed him to a state hospital. After a 2005 revocation from Conditional Release Program (CONREP), an outpatient treatment program, defendant was returned to Napa State Hospital. The trial court has since extended his involuntary commitment multiple times. (*People v. Gonzales* (Jan. 15, 2019, C085518) [nonpub. opn.].)

In April 2019, this most recent recommitment proceeding was heard. Drs. Amrit Saini and Kobita Rikhye testified as experts for the People. Napa State Hospital psychiatrist Dr. Amrit Saini was defendant's treating psychiatrist from September 2017 to October 2018. Based on Dr. Saini's own evaluations, defendant's historical factors, recent clinical pattern, lack of insight into his mental illness and judgment, mental health diagnoses, medical history and treatment compliance levels, and medical records, Dr. Saini concluded if defendant were released in an unsupervised setting, defendant presented a substantial danger to the safety of others, a high risk of future violence, and a high possibility of substance use relapse. Dr. Saini also concluded defendant's discharge plan was incomplete and would not hold up well in practice.

The parties stipulated, if called to testify, defendant's current treating psychiatrist, Dr. Aslam, would testify defendant had declined to participate in telepsychiatric evaluations and he had not met with defendant in his capacity as a psychiatrist.

---

[2] We relate only the factual background and procedural history relevant to the resolution of the issues on appeal.

2

Dr. Kobita Rikhye had been defendant's treating psychologist since January 2014. Dr. Rikhye performed a risk evaluation and concluded defendant was a high risk in the community and moderate risk at the state hospital. Dr. Rikhye also concluded defendant had a combination of risk factors, including a lack of a well-developed understanding of his risk for violence and need for treatment and lack of attendance in meetings with his psychiatrist and treatment teams. Defendant was also refusing to meet with outpatient resources. Dr. Rikhye was concerned with defendant's lack of complete engagement in treatment and the quickness with which defendant can decompensate. Based on a variety of risk management factors, including historical, current, future, and clinical, Dr. Rikhye concluded defendant presented a substantial danger of physical harm to others. Dr. Rikhye also concluded defendant's risk for violence was exacerbated by his lack of insight and understanding of his mental illness, and the dangers related to substance abuse, need for treatment and medications, poor treatment and supervision response, and lack of a fully developed plan for being in the community.

Defendant's family members also testified at the hearing. They relayed their support for him, and their ability and qualifications to help him if he were released, including medical backgrounds, financial resources, and commitment to assisting defendant.

The jury found defendant suffered from a severe mental disorder that caused him to represent a substantial danger of physical harm to others, and the trial court ordered his commitment extended to October 10, 2020.

3

DISCUSSION

I

*Admission of Case-specific Testimonial Evidence Through Expert Testimony*

Defendant contends the trial court erred in admitting a number of portions of testimony of both Dr. Saini[3] and Dr. Rikhye[4] in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). Defendant acknowledges that there was no objection to the testimony, except as to one part of Dr. Rikhye's testimony that defendant had minimal

---

[3] Defendant claims this specific testimony from Dr Saini should have been excluded: "1. Appellant had a history of paranoid delusions, auditory hallucinations, and behavioral problems including aggression and assault. [Citation.] [¶] 2. At the time of his original, 1999 offense, appellant was having paranoid delusions that his brother was trying to harm his children, and assaulted his brother as a result. [Citation.] [¶] 3. Appellant had stopped taking his prescribed antipsychotic medication a few weeks before the 1999 assault. [Citation.] [¶] 4. In 2005, appellant was revoked from CONREP because he had not been taking his medications regularly, was using alcohol and other substances, not following CONREP's rules, and fought with a peer. [Citation.] [¶] 5. Appellant had relapsed on substances a couple of times on CONREP. [Citation.] [¶] 6. In 2015, appellant had a relapse of delusions, assaulted a peer and threatened staff after going off his Clozapine for two days. [Citation.] [¶] 7. At the time of trial, appellant had been isolating himself socially and sometimes not following staff instructions. [Citation.] [¶] 8. Appellant refused to meet with his CONREP worker when they came in November 2018."

[4] Defendant claims this specific testimony from Dr. Rikhye should have been excluded: "1. Dr. Rikhye testified that she had spoken directly with appellant about his 1999 offense, but it is unclear whether appellant told her that he had gone off his medication and was using substances, or whether this was gleaned from records. [Citation.] [¶] 2. Appellant had been inconsistent in attending the relape [*sic*] prevention plan group, had minimal attendance at other treatment groups and did not attend church services in the hospital. [Citation.] [¶] 3. In 2005, when he was terminated from CONREP, appellant had gone off his medication and got into a fight with another patient. [Citation.] [¶] 4. In 2015, appellant heard voices. [Citation.] [¶] 5. In 2016, appellant attacked a peer unprovoked when he had missed a couple of blood draws to monitor his level of medication. [Citation.]"

attendance in groups. We conclude defense counsel forfeited the claim by not making a specific objection.

*Relevant Factual Background*

Prior to trial, relying on *Sanchez, supra*, 63 Cal.4th 665, defense counsel made a general motion in limine which included a request the trial court exclude references to case-specific facts contained within treatment records. At the hearing on the motions in limine, the parties informed the trial court they had reached an agreement as to the "*Sanchez* expert testimony of case specific facts." Defense counsel went on to advise the trial court, "There will be testimony, in my opinion, that could look like *Sanchez* case specific, but it's not." Defense counsel stated he did not have an objection to two specific incidents being admitted into evidence, a 2005 assault by defendant when he was off his medication and a 2015 incident where he decompensated and committed an assault. Defense counsel specifically stated, "I am trial counsel making a tactical decision in this to allow that limited testimony in. I don't think it is *Sanchez* material, but if it were, I am making that decision as trial counsel."

The sole objection came during Dr. Reikhey's testimony, "I do know in the past year he has had minimal attendance in groups. I have checked in with individual providers and most of them say –" Defense counsel interjected, "Objection, hearsay." The trial court implicitly overruled the objection, and admonished the jury that experts were permitted to rely on information in the field for their opinion, not the truth of the matter asserted.

*Relevant Law*

Under *Sanchez*, "[w]hen any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay." (*Sanchez, supra*, 63 Cal.4th at p. 686.) As such, the statements are only admissible if they either fall under a hearsay exception or are independently proven. (*Ibid*.) "Case-specific facts are those relating to the particular

5

events and participants alleged to have been involved in the case being tried." (*Id*. at p. 676.) If the hearsay involves testimonial statements, then, under *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177], any error is subject to the harmless beyond a reasonable doubt standard for constitutional errors. (*Sanchez,* at pp. 670-671.) "Testimonial statements are those made primarily to memorialize facts relating to past criminal activity, which could be used like trial testimony. Nontestimonial statements are those whose primary purpose is to deal with an ongoing emergency or some other purpose unrelated to preserving facts for later use at trial." (*Id.* at p. 689, fn. omitted.) Also, in order to be considered testimonial, "the statement must be made with some degree of formality or solemnity." (*People v. Dungo* (2012) 55 Cal.4th 608, 619; see *Sanchez,* at pp. 692-694.) Although *Sanchez* is a criminal case, its analysis of the admissibility of expert testimony under Evidence Code sections 801 and 802 also applies to cases arising under section 1026.5. (*Sanchez,* at p. 670; *People v. Jeffrey G.* (2017) 13 Cal.App.5th 501, 507; see *People v. Burroughs* (2016) 6 Cal.App.5th 378, 407.)

The failure to object to the admission of expert testimony or hearsay at trial forfeits a claim on appeal that the evidence was improperly admitted. (Evid. Code, § 353; see *People v. Perez* (2020) 9 Cal.5th 1, 7; *People v. Ramos* (1997) 15 Cal.4th 1133, 1171.) Defendant's only objection to any of the complained-of testimony was a single hearsay objection. This is not sufficient to preserve a claim under *Sanchez.* *Sanchez* involves a two-step analysis, to address expert witness basis testimony consisting of case-specific facts in criminal cases. The first is a traditional hearsay inquiry: "Is the statement one made out of court; is it offered to prove the truth of the facts it asserts; and does it fall under a hearsay exception? If a hearsay statement is being offered by the prosecution in a criminal case, and the *Crawford* limitations of unavailability, as well as cross-examination or forfeiture, are not satisfied, a second analytical step is required." (*Sanchez, supra*, 63 Cal.4th at pp. 680.) The second step of the analysis is whether the statement is *testimonial* hearsay, as required to implicate the

confrontation clause under *Crawford v. Washington, supra*, 541 U.S. at pp. 51-52, 68. (*Sanchez, supra*, 63 Cal.4th at pp. 680, 685-686; *People v. Ochoa* (2017) 7 Cal.App.5th 575, 583 (*Ochoa*).)  A hearsay objection does not preserve a claim under the confrontation clause.  (*People v. Redd* (2010) 48 Cal.4th 691, 730.)  Accordingly, defendant's claims are forfeited.

Defendant argues we should decide this issue on the merits irrespective of the lack of objection because it presents a pure question of law.  It does not.  A determination of whether the out-of-court statements were testimonial hearsay requires an examination of the context in which the statements were made, the purpose of making the statements, and the degree of solemnity attendant to making the statements.  In the absence of an objection, the record is silent as to these facts.  Accordingly, we have no basis on which to determine whether the statements were testimonial or not.  (See *Ochoa, supra,* 7 Cal.App.5th at pp. 584-585; *People v. Vega-Robles* (2017) 9 Cal.App.5th 382, 414.)

II

*Ineffective Assistance of Counsel*

Defendant contends counsel's failure to object to the expert testimony was ineffective assistance of counsel.  Defendant argues this was not a tactical decision, but the result of deficient performance.  The record belies this claim.

To establish ineffective assistance of counsel, defendant must show that " '(1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' " (*People v. Johnson* (2015) 60 Cal.4th 966, 980.) We presume that counsel's actions fall within the broad range of reasonableness and defer to counsel's tactical decisions.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Reversal is appropriate only if:  "(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a

reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid.*; see *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Defense counsel explicitly stated, as to the possible *Sanchez* evidence, he was making a tactical choice not to object to that evidence. This was not an unreasonable tactical choice. That evidence is subject to exclusion under *Sanchez* objection does not mean the evidence is entirely inadmissible. Rather, it means only the evidence cannot come in through the expert testimony. The underlying information, the substance of the witness accounts or medical records, could be admissible through live witnesses or other direct evidence. And, there is no indication in this record that it would not have been admissible through live witnesses or other direct evidence. Thus, if counsel had made a *Sanchez* objection, the prosecution could have relied on live witnesses or other direct evidence as to the information relied upon by the experts as the basis for their opinions. It was not unreasonable for counsel to prefer this evidence come in through two expert witnesses, rather than a parade of witnesses and documentary evidence for the prosecution. Expert witness testimony can be less detailed, more clinical, and less emotional than direct evidence and live testimony of percipient witnesses, particularly as two incidents involved assaults. In addition, the experts' information, and what they can relay to the jury, may be more limited than the testimony of percipient witnesses. Thus, it was not unreasonable for counsel to conclude the expert testimony was less damaging than additional live witnesses and direct testimony on this background material that would have resulted if counsel had raised *Sanchez* objections. (*People v. Bona* (2017) 15 Cal.App.5th 511, 522.) Because there is a reasonable basis for counsel's explicit tactical decision not to object, counsel was not ineffective.

DISPOSITION

The order is affirmed.

/s/
HOCH, J.

We concur:

/s/
BLEASE, Acting P. J.

/s/
MURRAY, J.