Filed 10/28/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>LATANYA A. STAMPS,<br><br>          Defendant and Appellant. | A142424<br><br>(Contra Costa County<br>Super. Ct. No. 51315373)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 30, 2016, be modified as follows:

1. On page 9, after the sentence reading "The Attorney General has proposed no hearsay exception that would render the Ident-A-Drug Web site contents admissible," add as footnote 7 the following footnote, which will require renumbering of all subsequent footnotes:

> [7] Throughout the appellate process, both parties have referred to the Ident-A-Drug content as hearsay.  In a petition for rehearing, the Attorney General suggests the Web site material is "not hearsay" because it falls within the exception for commercial lists and the like in Evidence Code section 1340.  The point has been forfeited by failure to assert it earlier. (*Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1308 [issues cannot be raised for first time on petition for rehearing].) Although we take no position on this issue, we note that a similar argument was rejected in *People v. Hard*, *supra*, 342 P.3d at pages 575– 579 because the information was deemed insufficiently reliable.

There is no change in the judgment.

Respondent's petition for rehearing is denied.


Dated: _____                    _____
                                                Rivera, Acting P.J.

Filed 9/30/16 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LATANYA A. STAMPS,<br><br>     Defendant and Appellant. | A142424<br><br>(Contra Costa County<br>Super. Ct. No. 51315373) |

Appellant Latanya A. Stamps was convicted of multiple drug possession offenses after drugs in both pill and crystalline form were discovered in her car, purse or clothing on four different dates in October through December 2012. She appeals, arguing the court improperly admitted the testimony of an expert criminalist who identified the drugs in pill form as controlled substances solely by comparing their appearance to pills pictured on a Web site called "Ident-A-Drug." Stamps attacks her convictions for possession of oxycodone and dihydrocodeinone on grounds that (1) the expert's testimony was based on unreliable and inadmissible hearsay from the Web site and did not involve the use of the witness's expertise; and (2) there was insufficient evidence to convict on the counts involving those drugs because the expert relied exclusively on the Web site in rendering her opinion. Because we agree that the expert testimony was improperly admitted, and because the testimony was central to Stamps's pill-based convictions, we reverse Stamps's convictions on counts one, five, seven and eight.[1] We

---

[1] Stamps's briefs identify the challenged counts as one, three, seven and eight, but it appears the correct counts are one, five, seven and eight.

conclude, however, that a retrial on those counts is not barred by double jeopardy principles.

## I.  BACKGROUND

On four occasions in October through December 2012, Stamps was pulled over by the Pittsburg police because her car did not display a license plate.  On each occasion she and her car were searched, and on each occasion drugs were discovered.  On October 30, 2012, the police discovered two yellow oval tablets with a capital "V" on one side and a white oval tablet with the word "Watson" on its side.  The next night, the police again stopped Stamps's car, conducted a search, and discovered a methamphetamine pipe and 1.19 grams of a white crystalline substance believed to be methamphetamine.  Yet again, on November 1, 2012, they found a bindle of white crystalline substance believed to be methamphetamine, weighing .25 gram, six white oblong pills, one with the words "Watson" and "853" printed on it, and .28 gram of some white chunky substance believed to be cocaine base.  On December 16, they found .03 gram of suspected methamphetamine in a plastic baggie in Stamps's bra and two pills in her car.  One of the pills was yellow with "853" written on it, and the other was a white tablet bearing the words "Watson 932."

Stamps was charged with eight counts of drug possession: three counts of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), one count of possession of cocaine (Health & Saf. Code,§§ 11350, subd. (a), 11379, subd. (a)), one count of possession of oxycodone (Health & Saf. Code, § 11350, subd. (a)), and three counts of possession of dihydrocodeinone (Health & Saf. Code, § 11350, subd. (a)).  At trial, the People proved the chemical composition of the crystalline and chunky substances through the testimony of criminalist Shana Meldrum, an employee of the Contra Costa County Sheriff's Crime Lab.  Meldrum performed a detailed chemical analysis on the suspected methamphetamine and cocaine, and her tests confirmed the drugs were as suspected.  With respect to the drugs in pill form, however, Meldrum identified the pills as oxycodone and dihydrocodeinone based solely on a visual comparison of the seized pills to those displayed on the Ident-A-Drug Web site.  Based

2

on the shape and color of the pills, their markings and their condition, Meldrum concluded they contained the alleged substances. This visual comparison was considered a "presumptive test" of each pill's chemical composition. Meldrum did no confirming chemical analysis of the pills. In addition to the expert's testimony, Stamps had given statements to the police on the dates of her arrests indicating the pills found on October 30, 2012, were Norco and Phexoreal, and the pills found on November 1, 2012 were "Norcos."

The jury found Stamps guilty on all eight counts, and she was placed on probation for two years. On appeal she challenges her convictions only on the four counts stemming from her possession of the various pills described above.

## II.    DISCUSSION

### A.    Admissibility of the Ident-A-Drug Evidence

Stamps contends Meldrum should not have been allowed to testify to the contents of the Ident-A-Drug Web site because the testimony brought before the jury inadmissible and unreliable hearsay which the jurors may have used as direct evidence of the charged offenses. She further argues the expert's testimony should have been excluded because matching the pills to a photograph on a Web site did not involve the use of the witness's expertise.[2]  (See *State v. Ward* (N.C. 2010) 694 S.E.2d 738, 746, fn. 5 (*Ward*).)  On the

_____

[2] Nor did Meldrum testify that any special expertise was required to use the Ident-A-Drug Web site. She testified she "entered the markings on the pill into the website and obtained a match result to the markings, to the shape and to the color of the pills, and presumptively identified those" as oxycodone and dihydrocodeinone. Her testimony did not reveal any special expertise required to interpret the results provided by Ident-A-Drug beyond ordinary visual acuity, and she added nothing of her expertise to the Ident-A-Drug information so as to make it an integral part of some larger opinion. By admitting Meldrum's testimony that the contents of the Ident-A-Drug Web site "match[ed]" the pill found in Stamps's possession, the court allowed her to place case-specific non-expert opinion before the jury, with the near certainty that the jury would rely on the underlying hearsay as direct proof of the chemical composition of the pills. The conclusion is unavoidable that Meldrum was a "mere conduit" for the Ident-A-Drug hearsay. (*I-CA Enterprises, Inc. v. Palram Americas, Inc.* (2015) 235 Cal.App.4th 257, 286; see *People v. Coleman* (1985) 38 Cal.3d 69, 92.)

3

admissibility question, we review the trial court's evidentiary ruling admitting the expert's testimony for abuse of discretion. (*People v. Dean* (2009) 174 Cal.App.4th 186, 193 (*Dean*); *People v. Robbie* (2001) 92 Cal.App.4th 1075, 1083.) On any question of law, however, such as the meaning to be ascribed to the language in an appellate court's opinion, we exercise independent review. (See, e.g., *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837 [statutory interpretation]; *Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 313 [language in a court disposition].)

### 1. *The Issue Was Not Forfeited*

Preliminarily, we reject the People's contention that Stamps's argument was forfeited by failure to object in the trial court on the specific ground that too much detail was provided by the expert about the Web site or that reliability of the Web site had not been established. Stamps's counsel did object repeatedly on grounds of hearsay and lack of foundation, which adequately alerted the court to the basis of objection and were sufficient to preserve the issue for review. (See *People v. Carillo* (2004) 119 Cal.App.4th 94, 101 [issue is whether the objection " 'fairly apprises the trial court of the issue it is being called upon to decide' "].)

### 2. *Expert Reliance on Hearsay Under California Law*

Until very recently, the law governing expert witnesses' reliance on hearsay—and the latitude given them to testify about such hearsay—seemed fairly well settled. For instance, in *People v. Gardeley* (1996) 14 Cal.4th 605 (*Gardeley*), our Supreme Court held a gang expert could testify to out-of-court statements he had heard from fellow officers and gang members, including a co-participant in the crimes with which the defendants were charged, relating to the gang's activities (*id.* at pp. 611–613, 619), and upon that basis could opine that the crime with which defendants were charged was a " 'classic' example of gang-related activity" (*id.* at p. 619). The court relied upon the following rule: "because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter . . . upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when

4

testifying, describe the material that forms the basis of the opinion." (*Id.* at p. 618.) In such a case, so the theory goes, the gang members' statements are not admitted for their truth, but only as basis evidence for the expert's opinion. (*People v. Thomas* (2005) 130 Cal.App.4th 1202, 1209–1210.) This was not a new development in *Gardeley*; California had long followed this not-admitted-for-its-truth rule. (E.g., *People v. Montiel* (1993) 5 Cal.4th 877, 918; *Dean*, *supra*, 174 Cal.App.4th at pp. 196–197; *Board of Trustees of Placerville Union School Dist. v. Porini* (1968) 263 Cal.App.2d 784, 792–794 & fns. 4 & 6.)

But even in holding such hearsay admissible, *Gardeley* and similar cases placed some limits on its admissibility by cautioning that "any material that forms the basis of an expert's opinion testimony must be reliable. [Citation.] For 'the law does not accord to the expert's opinion the same degree of credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' " (*Gardeley*, *supra*, 14 Cal.4th at p. 618.) *Gardeley* further reminded the trial courts of their power to limit " 'the form in which the expert is questioned to prevent the jury from learning of incompetent hearsay.' " (*Id*. at p. 619.) Thus, trial courts were left with broad discretion to determine whether particular facts to which an expert was prepared to testify were sufficiently "reliable" to come before the jury. Concurrently, trial courts were and are charged with an important gatekeeping "duty" to exclude expert testimony when necessary to prevent unreliable evidence and insupportable reasoning from coming before the jury. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 753 (*Sargon*);[3] see *People v. Brown* (2016) 245 Cal.App.4th 140, 156.) Because appellate review is for abuse of

---

[3] Specifically, *Sargon* requires trial courts to probe expert testimony under Evidence Code sections 801, subdivision (b), and 802 and exclude any portion of it "that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative. Other provisions of law, including decisional law, may also provide reasons for excluding expert opinion testimony." (*Sargon*, *supra*, 55 Cal.4th at pp. 771–772.)

5

discretion, this broad discretion went largely uncorrected except in cases of manifest abuse.

Recently, however, the not-admitted-for-its-truth rationale was jettisoned altogether—at least with respect to "case-specific hearsay"—when a unanimous Supreme Court announced: "this paradigm is no longer tenable because an expert's testimony regarding the basis for an opinion *must* be considered for its truth by the jury." (*People v. Sanchez* (2016) 63 Cal.4th 665, 679 (*Sanchez*).)  In so holding, *Sanchez* followed the reasoning of a number of jurists who have criticized the logic of the not-for-its-truth rationale, including a majority of justices of the United States Supreme Court.  (*Id.* at pp. 680–686; see also, *Williams v. Illinois* (2012) 567 U.S. ___, 132 S.Ct. 2221, 2256, 2258 & fn. 3 (conc. opn. of Thomas, J.); *id.* at pp. 2264–2269 (dis. opn. of Kagan, J.); *People v. Hill* (2011) 191 Cal.App.4th 1104, 1127–1129; *People v. Mercado* (2013) 216 Cal.App.4th 67, 89.)  In vigorously rejecting the not-for-its-truth rationale, the Supreme Court also dealt a death blow to the notion that juries can make any sense of the distinction traditionally espoused in cases such as *Gardeley*.[4]  The court expressly ruled that a limiting instruction intended to restrict jurors' consideration of such evidence to the purpose of serving as the basis for the expert's opinion was ineffective in eradicating the evidentiary error or rendering it harmless.  (*Sanchez, supra,* at p. 686, fn. 13.)  The paradigm shift occasioned by *Sanchez* no doubt affects the outcome of the present appeal. Indeed, as we shall discuss, we find *Sanchez* dispositive.

*Sanchez* dealt with a gang expert's testimony subject to a challenge under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), but in the course of analyzing the Confrontation Clause issue the Supreme Court found occasion to revisit, and essentially to revamp, state law hearsay rules relating to expert testimony generally. (*Sanchez*, *supra*, 63 Cal.4th at pp. 674–686.)  It is this non-*Crawford* aspect of *Sanchez*

---

[4] *Sanchez* specifically disapproved several of the Supreme Court's earlier cases to the extent they conflicted with its holding, including *Gardeley*, *supra*, 14 Cal.4th 605, and *Montiel*, *supra*, 5 Cal.4th 877.  (*Sanchez*, *supra*, 63 Cal.4th at p. 686, fn. 13.)

that comes into play here.[5] Insofar as pertinent to this case, the significance of *Sanchez* was not left open to doubt. The court specifically "adopt[ed] the following rule: When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth." (*Id*. at p. 686.) Because we conclude the Ident-A-Drug evidence was admitted for its truth under the foregoing test, while not coming within any hearsay exception, we also conclude it was improperly admitted.

Incorporated within the *Sanchez* rule is what appears to be a new litmus test for admissibility of expert testimony incorporating hearsay as the basis for the expert's opinion: it depends on whether the matter the prosecution seeks to elicit is "case-specific hearsay" or, instead, part of the "general background information" acquired by the expert through out-of-court statements as part of the development of his or her expertise. (*Sanchez*, *supra*, 63 Cal.4th at p. 678.) Though most jurists may find this a novel approach, the Supreme Court took pains to explain that the rule announced in *Sanchez* in fact "restores the traditional distinction between an expert's testimony regarding background information and case-specific facts" that had existed at common law and in the early California cases. (*Id*. at p. 685.) *Sanchez* itself acknowledged that the line between "case-specific facts" and "general background information" had "become blurred" due to decades of statutory and case law that paid no heed to such a distinction. (*Id*. at p. 678.)

After *Sanchez*, reliability is no longer the sole touchstone of admissibility where expert testimony to hearsay is at issue. Admissibility—at least where "case-specific hearsay" is concerned—is now more cut-and-dried: If it is a case-specific fact and the witness has no personal knowledge of it, if no hearsay exception applies, and if the expert treats the fact as true, the expert simply may not testify about it. (*Sanchez*, *supra*, 63 Cal.4th at pp. 684–686.) The underlying fact also may not be included in a hypothetical

---

[5] The *Crawford* line of cases has no direct application here because the challenged hearsay was not testimonial. (See *Crawford*, *supra*, 541 U.S. at pp. 50–53.)

question posed to the expert unless it has been proven by independent admissible evidence.  (*Id.* at pp. 684, 686.)  If the hearsay relied upon by the expert is not case-specific, as we read *Sanchez*, the evidence still is admitted for its truth (*id*. at pp. 685–686), and is therefore hearsay, but we tolerate its admission due to the latitude we accord experts, as a matter of practicality, in explaining the basis for their opinions (*id*. at p. 676).  Where general background hearsay is concerned, the expert may testify about it so long as it is reliable and of a type generally relied upon by experts in the field, again subject to the court's gatekeeping duty under *Sargon*, *supra*.  (*Sanchez*, *supra*, at pp. 676–679, 685; Evid. Code, §§ 801, 802.)

### 3. *The Ident-A-Drug Testimony Was Inadmissible Because It Was Case-Specific*

Stamps argues, and the People do not contest, that the content of the Ident-A-Drug Web site would not be independently admissible to prove its truth because it was hearsay.[6]  (Evid. Code, § 1200, subd. (a); *People v. Franzen* (2012) 210 Cal.App.4th 1193, 1203–1215 [police use of Web site containing cell phone data did not make information retrieved from the Web site admissible over a hearsay objection]; *People v. Hard* (Colo. Ct. App. 2014) 342 P.3d 572, 575–579 [information found on "Drugs.com" was not sufficiently reliable to be admissible as hearsay exception when trooper identified hydrocodone pills only by visual comparison].)  Indeed,  the cases reflect a common judicial skepticism of evidence found on the Internet:  "While some look to the Internet as an innovative vehicle for communication," the courts continue to view it "warily and wearily" as a catalyst for "rumor, innuendo, and misinformation."  (*St. Clair v. Johnny's Oyster & Shrimp, Inc.* (S.D. Tex. 1999) 76 F.Supp.2d 773, 774.)  The Internet "provides no way of verifying the authenticity" of its contents and "is inherently

---

[6] Based on Meldrum's testimony, it appears the Web site provided photographs of pills, together with sufficient text to communicate that the photograph depicted a specified pharmaceutical.  This combined content would constitute an out-of-court "statement" of a "person" (the person who entered the information on the Web site) so as to bring it within the definition of hearsay.  (Evid. Code, §§ 225, 1200, subd. (a).)

8

untrustworthy.  Anyone can put anything on the Internet.  No web-site is monitored for accuracy and *nothing* contained therein is under oath or even subject to independent verification absent underlying documentation." (*Id.* at pp. 774–775.)  Moreover, "hackers can adulterate the content on *any* web-site from *any* location at *any* time.  For these reasons, any evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules . . . ." (*Id.* at p. 775; see generally, *Crispin v. Christian Audigier, Inc.* (C.D. Cal. 2010) 717 F.Supp.2d 965, 976, fn. 19 [discussing why Wikipedia content generally is considered inadmissible hearsay]; *Southco, Inc. v. Fivetech Tech., Inc.* (E.D. Pa. 2013) 982 F.Supp.2d 507, 515 [Web sites are "typically inadmissible as hearsay," and "even website evidence admissible under a hearsay exception requires authentication"]; *Hernandez v. Smith* (E.D. Cal. 2015) 2015 U.S. Dist. LEXIS 90740, p. *12 [striking "printouts of Internet websites as inadmissible hearsay and as unauthenticated"].)

The Attorney General has proposed no hearsay exception that would render the Ident-A-Drug Web site contents admissible.  Because the Ident-A-Drug content was itself inadmissible hearsay, and because that content was case-specific, Meldrum's testimony about the Web site was inadmissible under the new paradigm.  *Sanchez* defined "case-specific" facts as those "relating to the particular events and participants alleged to have been involved in the case being tried." (63 Cal.4th at p. 676.)  We think it undeniable that the chemical composition of the pills Stamps possessed must be considered case-specific.  Indeed, the Ident-A-Drug hearsay was admitted as proof of the very gravamen of the crime with which she was charged.  There is no credible argument that the testimony concerned "general background" supporting Meldrum's opinion.  That being true, our hearsay analysis is at an end.  We need not address the out-of-state cases and other authorities cited by the parties, nor need we get bogged down in considering the reliability of the Ident-A-Drug Web site.

### 4. *Harmless Error Analysis*

We review the erroneous admission of expert testimony under the state standard of prejudice. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Dean*, *supra*, 174 Cal.App.4th at p. 202 [*Watson* standard applies].) Under that standard the error was not harmless.

First, *Sanchez* specifically held a limiting instruction was not effective in preventing the jury from considering the hearsay as direct evidence of the facts asserted. (*Sanchez*, *supra*, 63 Cal.4th at p. 684.) And cycling hearsay through the mouth of an expert does not *reduce* the weight the jury places on it, but rather tends to *amplify* its effect. We cannot dismiss the evidence in this case as carrying little weight with the jury or being duplicative of other evidence.

Because the Ident-A-Drug testimony was the only evidence that the pills actually contained the controlled substances alleged in the information, the convictions on counts one, five, seven and eight must be reversed. In this case, unlike some others, there was no chemical analysis to supplement the expert's testimony based on visual similarities she noted on Ident-A-Drug (cf. *State v. Stank* (Wis. App. 2005) 708 N.W.2d 43, 54–55), and no identification of the drug on sight based on experience, as with a pharmacist witness (cf. *Sterling v. State* (Tex. App. 1990) 791 S.W.2d 274, 277). Nor was there any testimony to the uniqueness of the trade dress of pharmaceuticals. (Cf. *Jones v. Commonwealth* (Ky. 2011) 331 S.W.3d 249, 255.) Meldrum's testimony also took no account of the possibility that the pills were counterfeit. (See *Ward*, *supra*, 694 S.E.2d at p. 745.)

There were, of course, admissions by Stamps that some of the pills were Norco and Phexoreal, but there was no testimony that these brand names are equivalent to oxycodone and dihydrocodeinone. And though this evidence may prove Stamps *believed* she was in possession of controlled substances, Meldrum's testimony was the only evidence that the pills actually contained dihydrocodeinone and oxycodone, as charged. We conclude it is reasonably probable the jury would have acquitted Stamps of the charges based on pill possession in the absence of the Ident-A-Drug testimony.

10

The evidence in question, consisting solely of Meldrum's unfiltered and unvarnished recapitulation of what she saw on the Ident-A-Drug Web site, was case-specific, did not come within any hearsay exception, was not personally known to the witness as a fact, was treated as true by Meldrum, and was inadmissible under *Sanchez*. Because it was central to conviction on the counts involving pills, we must reverse as to those counts.

**B.    Sufficiency of the Evidence**

Although reversal is required based on inadmissibility of the evidence alone, we consider Stamps's insufficiency of the evidence argument as well, in order to determine whether retrial is barred by double jeopardy principles, as announced in *Burks v. United States* (1978) 437 U.S. 1, 16–17 (*Burks*).  (See *People v. Smith* (1998) 62 Cal.App.4th 1233, 1235, fn. 1.)  Though we agree with Stamps that without the Ident-A-Drug testimony there was insufficient evidence to convict Stamps on the pill-based counts, we do not find the evidence as introduced by the prosecution was, apart from the evidentiary error, insufficient to support those convictions.  The evidence was not, as presented, "so lacking that the trial court should have entered a judgment of acquittal." (*Lockhart v. Nelson* (1988) 488 U.S. 33, 39.)  Acceptance by the jurors of the veracity of the Ident-A-Drug results was not so misguided as to render the guilty verdicts among those that no "rational factfinder" could render.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 313.)  And in addition to Meldrum's testimony there were admissions by Stamps regarding the forbidden nature of the pills she possessed. The prosecution did not fail altogether "to muster" sufficient evidence to support the charges (*Burks*, *supra*, at p. 11); rather, our analysis discloses only that "evidence was erroneously admitted against" Stamps, which was an "error in the proceedings leading to conviction" such that a retrial is not barred. (*Lockhart v. Nelson*, *supra*, 488 U.S. at pp. 38, 40; see *People v. Bryant* (1992) 10 Cal.App.4th 1584, 1596–1598; *People v. Reynolds* (1989) 211 Cal.App.3d 382, 390.)

### III. DISPOSITION

The judgment is reversed as to counts one, five, seven and eight. In all other respects it is affirmed. The cause is remanded to the superior court for further proceedings not inconsistent with this opinion.

 

 

 

_____
Streeter, J.

We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.

A142424/*People v. Stamps*

People v. Stamps (A142424)


Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. John C. Cope

Counsel:

      Alfons Wagner, J. Bradley O'Connell, under appointment by the Court of Appeal, for Defendant and Appellant.

      Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Ann P. Wathen, Deputy Attorney General for Plaintiff and Respondent.