Filed 5/14/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ANTONIO ESPINOZA,<br><br>    Defendant and Appellant. | 2d Crim. No. B283895<br>(Super. Ct. No. 2015033556)<br>(Ventura County) |

Here we hold that Ident-A-Drug, an internet drug reference work, comes within the published compilation exception to the hearsay rule set forth in Evidence Code section 1340.

Jose Antonio Espinoza appeals his conviction by jury of possession of a controlled substance (methadone and clonazepam pills) in a jail facility (Pen. Code, § 4573.6, subd. (a))[1] and two counts of resisting, obstructing or delaying a peace officer (§ 148, subd. (a))(1)). He admitted four prior prison term enhancements (§ 667.5, subd. (b)) and was sentenced to four years felony jail with mandatory supervision. (§ 1170, subd.

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

(h)(5)(B).)   Appellant unsuccessfully contends that *Sanchez* error (*People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*)) occurred when a criminalist testified that "Ident-A-Drug," an internet drug reference work, was used to presumptively identify the pills as controlled substances.  We modify the judgment to reflect that three prior prison term enhancements were stricken at the sentencing hearing (§ 1385) and affirm the judgment as modified. (§ 1260.)

*Facts and Procedural History*

On October 21, 2015, appellant entered the Ventura County jail as an inmate.  Appellant asked an inmate for a latex glove, adjusted his crotch area, and put his hands down his pants.  Ventura County Sheriff's Deputy Daniel James suspected that appellant was smuggling drugs into the jail.

Deputy James, Deputy Martin Nunes, and two other deputies escorted appellant to the shower area to conduct a visual search for drugs.  Appellant was asked to disrobe, bend over, spread his butt cheeks, and cough.  Appellant did not fully comply and was told to "quit messing around."  Deputy James saw a film canister near appellant's rectum.  He ordered appellant to hand it over.

Appellant opened the canister and tried to swallow an assortment of pills.  Deputy James grabbed appellant's right hand and pushed him against a wall.  Deputy Nunes spun appellant around and grabbed his chin to prevent appellant from swallowing the pills.  Appellant clenched and raised his hands to fight.  Deputy James punched appellant to gain "compliance." Appellant struggled with the deputies, causing injury to Deputy Nunes.  Appellant was ordered to stop resisting but instead, kicked at the pills trying to scatter or crush them.

A total of 80 pills were collected and photographed. Using the "Drugs Identification Bible and Drugs.com" as a reference source, Deputy James determined that the pills were methadone and two types of clonazepam.

Regina Davidson, a criminalist at the Ventura County Sheriff's Forensic Services Bureau, examined the pills and used Ident-A-Drug, an internet drug reference work, to identify the pills. Based on the shape, color, and pill markings, Davidson opined that the pills were methadone and clonazepam.

Appellant offered no testimony to refute the evidence against him.

*Sanchez*

Appellant argues that Davidson's expert opinion testimony was testimonial hearsay and inadmissible under *Sanchez.* But he only objected on lack of foundation. He thus forfeited the hearsay/*Sanchez* objection. (See, e.g., *People v. Perez* (2017) 16 Cal.App.5th 636, 645-646 [*Sanchez* error forfeited]; *People v. Redd* (2010) 48 Cal.4th 691, 730 [confrontation clause error forfeited].)

On the merits, there was no error. In *Sanchez, supra,* 63 Cal.4th 665, our Supreme Court held that an expert is precluded from relating case-specific facts about which the expert has no independent knowledge. (*Id.* at p. 676.) The *Sanchez* court stated: "[An] expert may still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so. . . . There is a distinction to be made between allowing an expert to describe the type or source of the matter relied upon as opposed to presenting, as fact, case-specific hearsay that does not otherwise fall under a statutory exception. ¶] What an expert *cannot* do is relate as true case-specific facts asserted in hearsay

3

statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id*. at pp. 685-686.)

Relying on *People v. Stamps* (2016) 3 Cal.App.5th 988 (*Stamps*), appellant argues that Davidson's testimony about Ident-A-Drug is testimonial hearsay. In *Stamps,* the criminalist used Ident-A-Drug to identify pills found on defendant but did not explain the website or say that any special expertise was required to use it. (*Id*. at pp. 991-992 & fn. 2.) The Court of Appeal, in a footnote, expressed concern regarding the reliability of internet websites but took "no position" on whether the Ident-A-Drug content fell within the published compilation exception to the hearsay rule, i.e. Evidence Code section 1340. (*Id*. at p. 997, fn. 7.) The court concluded that the expert opinion testimony ran afoul of *Sanchez:* "By admitting [the expert's] testimony that the contents of the Ident-A-Drug Web site 'match[ed]' the pill found in Stamp's possession, the [trial] court allowed [the expert] to place case-specific non-expert opinion before the jury, with the near certainty that the jury would rely on the underlying hearsay as direct proof of the chemical composition of the pills. . . . [The expert] was a 'mere conduit' for the Ident-A-Drug hearsay. [Citations.]" (*Id*. at p. 992, fn. 2.)

We need not opine on whether the analysis in *Stamps*, *supra*, 3 Cal.App.5th 988, is correct. It is sufficient to observe that we have a "position" on whether Ident-A-Drug is a published compilation within the meaning of Evidence Code section 1340. It is. We agree with the analysis in the First District's case of *People v. Mooring* (2017) 15 Cal.App.5th 928 (*Mooring*).

4

Davidson stated that Ident-A-Drug is an authoritative reference, similar to the Physicians' Desk Reference and Drugs.com, and it is commonly used by experts in the field of forensic science. Davidson received special training in the use of Ident-A-Drug and explained how it helped her recognize the shape and marking on the pills. Where general background hearsay is concerned, the expert may testify about it so long as it is reliable and of a type generally relied upon by experts in the field. (*Sanchez*, *supra*, 63 Cal.4th at pp. 685-686.)

In *Mooring*, *supra*, 15 Cal.App.5th 928, a criminalist used the Ident-A-Drug website to identify over 4,000 pills by comparing the color, shape and pill markings to the images in Ident-A-Drug. (*Id*. at p. 932.) The expert stated that the method was generally accepted in the scientific community and that Ident-A-Drug has information derived from the FDA and pharmaceutical pill manufacturers. (*Id*. at p. 938.) The Court held the expert testimony fell within the "'published compilation'" exception to the hearsay rule, codified in Evidence Code section 1340. This section provides: "Evidence of a statement, other than an opinion, contained in a tabulation, list, directory, register, or other published compilation is not made inadmissible by the hearsay rule if the compilation is generally used and relied upon as accurate in the course of a business as defined in [Evidence Code] Section 1270." (*Id*. at p. 937.) The court in *Mooring* concluded that the Ident-A-Drug website was not testimonial because it "contains generic data about pharmaceutical pills, based on information provided from pharmaceutical manufacturers and the FDA" and its primary purpose "was not to gather or preserve evidence for a criminal prosecution. [Citations.]" (*Id*. at p. 942.)

Davidson testified that Ident-A-Drug is a reference guide and is part of the "literature . . . that is available to doctors and hospitals and labs so they can identify tablets. . . . [Y]ou . . . look at the [pill] color, shape and markings and use the book for that." Davidson stated that Ident-A-Drug was an authoritative resource used by criminalists and that she was trained to use it at the San Bernardino County and Ventura County crime labs. Davidson explained that it is published both in book form and as an internet reference, and that she relied on it in identifying the pills as clonazepam and methadone. On cross-examination, Davidson admitted that no chemical analysis was made.

Appellant argues that Davidson did not testify that Ident-A-Drug was a subscription based, log-in controlled website. That is inconsequential. Davidson testified what Ident-A-Drug was, explained her training and use of the website, and stated that she used it as a reference source to identify the pills. The testimony established that it was an authoritative published compilation of generic drug data used by criminalists. (*Mooring*, *supra*, 15 Cal.App.5th at p. 942.) Appellant complains that Davidson conducted only a presumptive test based on the appearance of the pills. That goes to the weight, not the admissibility of the testimony. There is no requirement that a chemical analysis be performed to identity a controlled substance. (*Id.* at p. 943.) "'[T]he nature of a substance, like any other fact in a criminal case, may be proved by circumstantial evidence . . .'" including "'the expert opinion of the arresting officer [citation] and by the conduct of the defendant indicating consciousness of guilt.' [Citations.]" (*Id.* at pp. 943-944.)

6

*Practical Wisdom With a Dose of Reality*

This and other criminal cases we decide compel us to offer a few observations about how we arrive at our decisions in criminal cases. Of course we follow the statutory and case law. We also apply common sense and practical wisdom. The facts here lead to the reasonable conclusion that appellant tried to smuggle restricted dangerous drugs into the county jail in his "butt." The pills were not a home cure for hemorrhoids. The evidence did not point to an innocent explanation for appellant's conduct. He did not offer a defense to the charges at trial nor did he have to. The prosecution was required to prove its case beyond a reasonable doubt. There is no "black letter" rule requiring a chemical analysis of pills to prove that they are restricted prescription drugs. (*Mooring*, *supra*, 15 Cal.App.5th at p. 942.) What cannot be disputed is that appellant, a recidivist, attempted to smuggle drugs into the county jail.[2] The manner in which the crime was committed is persuasive evidence from which the jury could draw the inference that these pills were the real thing. (*Id.* at pp. 943-944.)

At no time below or on appeal has appellant ever suggested that the drugs were not methadone and clonazepam. Yet, he faults the Ventura County Sheriff's criminalist for not doing a chemical analysis of the pills.

In his provacative book, The Price of Perfect Justice: The Adverse Consequences of Current Legal Doctrine in the American Courtroom (1974), retired Justice Macklin Fleming eloquently

---

[2] Appellant has an extensive "rap sheet" and had nine pending cases against him at time of sentencing.

7

discusses the price associated with the quest for "perfect justice." For the sake of discussion, let us assume we reverse the judgment. On retrial, a chemical analysis in all likelihood would be performed by the sheriff's crime lab. Perhaps the pills could be sent to the FBI laboratory at Quantico Virginia for an analysis. Practical wisdom and common sense lead to the reasonable inference on appeal that appellant knew the drugs were real and that he acted with criminal intent when he brought the pills into the county jail.

"A trial is a search for the truth." (*People v. Zack* (1986) 184 Cal.3d 409, 415.) A defendant is entitled to a fair trial, not a perfect one. Here he had a fair trial.

*Prior Prison Term Enhancements*

The Attorney General points out that the sentence is unauthorized because the trial court failed to strike three prior prison term enhancements. Appellant was sentenced to three years felony jail plus one year on a fourth prior prison term enhancement. The trial court impliedly struck three other prior prison term enhancements based on the probation recommendation that one prior prison term enhancement be imposed. (§ 1385.) Rather than remand the matter for resentencing (see, e.g., *People v. Lua* (2017) 10 Cal.App.5th 1004, 1020-1022), we exercise our power to modify the judgment and strike the three remaining prior prison term enhancements. (See § 1260; *People v. Chacon* (1995) 37 Cal.App.4th 52, 67.)

8

*Disposition*

The judgment is modified to reflect that three prior prison term enhancements (§ 667.5, subd. (b)) were stricken. (§ 1260.) The superior court clerk is directed to prepare an amended June 19, 2017 sentencing minute order to so reflect. As modified, the judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

9

David Worley, Judge

Superior Court County of Ventura

_____

Todd W. Howeth, Public Defender, Russell L. Baker, Snr. Deputy Public Defender for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.