Filed 5/31/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH VEAMATAHAU,<br><br>     Defendant and Appellant. | A150689<br><br>(San Mateo County<br>Super. Ct. No. SF398877A) |

After a jury trial, defendant was convicted of, among other things, two misdemeanor counts of possession of personal identifying information and possession of a controlled substance, alprazolam (Xanax). On appeal, he argues the trial court erroneously denied his motion to dismiss both charges under Penal Code section 1118.1. He further contends his controlled substance possession conviction must be reversed because the prosecution's expert conveyed inadmissible, case-specific hearsay to the jury.

In the published portion of this opinion, we conclude the prosecution's expert's testimony that he relied on a database to determine the contents of the pills found on defendant's person was not case-specific hearsay under state law. We affirm the judgment.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A. and II.B.4.

## I. BACKGROUND

On November 19, 2015, the district attorney filed an information charging defendant with six felonies and three misdemeanors.[1]  As relevant to this appeal, defendant was charged with misdemeanor possession of personal identifying information (Pen. Code,[2] § 530.5, subd. (c)(1); count 7) and misdemeanor possession of alprazolam (Xanax) (Health & Saf. Code, § 11375, subd. (b)(2); count 8).

On June 6, 2015, police sergeant Clint Simmont pulled defendant over in his vehicle for making a right turn from a stop sign without signaling.  Sergeant Simmont searched defendant and his car.  He found a cellophane wrapper containing 10 pills in defendant's coin pocket, and 5 personal checks in his back pocket.  Officers also found cocaine base in the pocket of the driver's door.  Defendant was arrested and transported to the police station.

At the police station, defendant provided a statement to Sergeant Simmont, which was played for the jury at trial.  In his statement, defendant said he takes four or five of the "Xanibar" pills found on his person every day, "[u]ntil [he] feel[s] good."  As to the checks found in his back pocket, defendant said he found them on the sidewalk and was going to "see what [he] could do with 'em."  He said he would try to cash them, but he doubted it would work because his name was not on them.  Defendant said he did not know who signed the back of the checks, and he "found 'em like that."

After trial, a jury found defendant guilty on four felony counts and counts 7 and 8. The trial court suspended imposition of sentence on defendant's felony counts and placed him on three years of formal probation with one year of local custody.  The court imposed concurrent 90-day jail terms for counts 7 and 8.

---

[1] Defendant pleaded no contest to two of the felonies and the prosecution dismissed a misdemeanor charge for driving without a valid driver's license. (Veh. Code, § 12500, subd. (a); count 9).

[2] All further statutory references are to the Penal Code unless otherwise indicated.

## II. DISCUSSION

### A. *Possession of Personal Identifying Information*

After the close of the prosecution's case, defendant moved under section 1118.1 to dismiss count 7 for possession of personally identifying information because there was no "information or . . . evidence with respect to the individuals, whether they're real people, whether they gave consent. . . . The only evidence is that he possessed these checks." The trial court denied the motion.

We review "the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction. [Citation.] 'In reviewing a challenge to the sufficiency of the evidence, . . . . we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.) "Review of the denial of a section 1118.1 motion made at the close of a prosecutor's case-in-chief focuses on the state of the evidence as it stood at that point." (*Ibid.*)

The jury found defendant violated section 530.5, subdivision (c)(1), which provides: "Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of another person is guilty of a public offense . . . ." " '[P]ersonal identifying information' " is defined as "any name, address, telephone number, . . . checking account number . . . of an individual person, or an equivalent form of identification." (§ 530.55, subd. (b).) A " 'person' " within the meaning of the statute is "a natural person, living or deceased, firm, association, organization, partnership, business trust, company, corporation, limited liability company, or public entity, or any other legal entity." (*Id.*, subd. (a).)

Defendant contends section 530.5 does not apply to " 'personal identifying information' of a fictitious person or entity," and therefore, for liability to attach, the

3

prosecution must prove the personal identifying information in question belongs to a real person or entity. Defendant relies on *People v. Barba* (2012) 211 Cal.App.4th 214 (*Barba*), which stated in dicta that the offense of *forgery* "may be committed by one who possesses either a real or *fictitious* check. Someone who commits the offense of forgery by using a fake check or similar instrument in which no real person or legal entity is identified would not be guilty of violating section 530.5, subdivision (a)."[3] (*Barba*, at p. 225.) *Barba* did not, however, address whether a prosecutor charging a violation of section 530.5 must prove the personal information belongs to a real, as opposed to fictitious, person or entity. "[I]t is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.)

In any event, even assuming the prosecution must establish the information in defendant's possession was that of a real person or entity, there was sufficient circumstantial evidence to sustain a conviction. At the time the trial court heard defendant's section 1118.1 motion, the five checks had been admitted into evidence. Each check was preprinted with identifying information (name, address, and checking account number)[4] of a different person or entity on checks bearing the names of established financial institutions. Moreover, defendant told Sergeant Simmont he found the five checks on the sidewalk. Defendant's statement he intended to cash the checks suggests he believed they belonged to real persons or entities. While hypothetically the checks defendant found could have been drawn in the name of fictitious persons, the jury could reasonably—and apparently did—reject that possibility. On this record, we conclude there was substantial evidence the checks found in defendant's possession contained the information of real persons or entities.

---

[3] *Barba* concerned section 530.5, subdivision (a), rather than subdivision (c)(1) as in this case, but both subdivisions rely on the same definition of personal identifying information. Subdivision (c)(1) proscribes the acquisition or retention of personal identifying information of another person, while subdivision (a) proscribes its use to obtain credit, goods, services, real property or medical information without consent.

[4] Some checks also contained phone numbers.

4

**B.** *Possession of Alprazolam*

Defendant challenges his conviction for possession of alprazolam on two grounds: first, he contends the evidence was insufficient to support his conviction because there was no evidence the pills he possessed were not counterfeit, and second, he argues the prosecution's expert impermissibly conveyed case-specific facts to the jury about the chemical composition of the pills discovered on his person. We address the latter contention first in the published portion of this opinion.

**1.** *Factual Background*

At trial, Scott Rienhardt, a forensic laboratory criminalist at the San Mateo County Sheriff's Office, testified regarding the forensic examination of suspected controlled substances found on defendant's person and in his car, including the pills located in his pocket. Rienhardt stated: "[W]ith pharmaceuticals, we just identify the tablet based on its logo. And we don't do chemical testing on those unless requested." Rienhardt testified the rectangular tablets found in the cellophane wrapper "contain[ed] alprazolam. The generic name is Xanax."[5] He identified their contents by "[u]sing a database that [he] searched against with [*sic*] the logos that were on the tablets." He said such a search was the generally accepted method of testing for that substance in the scientific community, and the results of his test were valid and unexceptional.

Two days after defendant's conviction, the California Supreme Court issued its opinion in *People v. Sanchez* (2016) 63 Cal.4th 665, 686 (*Sanchez*), which held an expert cannot "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception."

---

[5] Defendant notes this is incorrect because Xanax is the registered trademark for a drug which contains alprazolam, but offers no evidence or authority for this assertion. Because the issue is not pertinent to our resolution of the case, we take no position on the matter.

Defendant contends his conviction must be reversed because Rienhardt's testimony relayed case-specific hearsay to the jury which was improper under *Sanchez*.[6]

## 2. *Forfeiture*

We first address the Attorney General's claim defendant forfeited the issue by failing to object below. We previously rejected a similar argument in *People v. Jeffrey G.* (2017) 13 Cal.App.5th 501, 507–508 (*Jeffrey G.*). There we explained, "Under the law prevailing at the time of defendant's hearing, an expert was permitted to testify relatively freely about the content of hearsay evidence relating to the circumstances at hand, if the evidence constituted a basis for his or her opinion." (*Id.* at p. 506.) Given the liberal admissibility of such testimony, any hearsay objection most likely would have been overruled. Because reviewing courts " 'have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile,' " and because parties are generally not expected to anticipate rulings that significantly change prevailing law, we concluded the defendant had not forfeited his claim. (*Id.* at pp. 507–508.) As in *Jeffrey G.*, defendant's trial took place before the *Sanchez* decision, and accordingly, he is not precluded from raising the issue on appeal despite his failure to object below.[7]

---

[6] Though *Sanchez* also addressed admission of testimonial hearsay in violation of the federal confrontational clause under *Crawford v. Washington* (2004) 541 U.S. 36 (*Sanchez*, *supra*, 63 Cal.4th at pp. 679–686), defendant does not argue the database hearsay was testimonial. (See *People v. Mooring* (2017) 15 Cal.App.5th 928, 941–942 [data on Ident-A-Drug Web site about chemical composition of pharmaceutical products was not testimonial hearsay because primary purpose was not to gather or preserve information for use in criminal prosecution].)

[7] We acknowledge that California appellate courts have reached different conclusions about forfeiture of *Sanchez* hearsay objections in cases tried before the *Sanchez* opinion issued. (Compare *People v. Blessett* (2018) 22 Cal.App.5th 903, 940–941 [requiring counsel to raise objections in trial court to preserve confrontation clause claims on appeal did not place unreasonable burden on defendant to anticipate *unforeseen* changes in the law]; *People v. Perez* (2018) 22 Cal.App.5th 201, 211–212 [*Sanchez* was not significant change in law that excused counsel's failure to object to hearsay at trial] with *People v. Flint* (2018) 22 Cal.App.5th 983, 996–997 [agreeing with *Jeffrey G.* and concluding defendant did not forfeit case-specific hearsay objections by failing to make

### 3. *Sanchez*

In *Sanchez,* our Supreme Court clarified the "traditional" distinction between "an expert's testimony regarding his general knowledge in his field of expertise" and the expert's testimony about "*case-specific* facts about which the expert has no independent knowledge." (*Sanchez, supra,* 63 Cal.4th at p. 676.) The former, while technically hearsay, is admissible, but the latter is not. (*Ibid.*) Turning to the merits of the case before us, we consider whether Rienhardt's expert testimony was inadmissible, case-specific hearsay.

Defendant relies heavily on a factually similar case from a different division of this court, *People v. Stamps* (2016) 3 Cal.App.5th 988 (*Stamps*), to argue for reversal here. In *Stamps*, the defendant was convicted of possession of drugs in a pill form. At trial, the expert criminalist identified the content of the drugs by visually comparing their appearance to pills on the "Ident-A-Drug" Web site. (*Id.* at p. 991.) "Based on the shape and color of the pills, their markings and their condition," the expert determined they contained the alleged controlled substances. (*Ibid.*) The *Stamps* court concluded the expert's testimony about the content of the Ident-A-Drug Web site was case-specific hearsay, and thus, inadmissible under *Sanchez.* (*Stamps*, at p. 997.) "We think it undeniable that the chemical composition of the pills Stamps possessed must be considered case specific. Indeed, the Ident-A-Drug hearsay was admitted as proof of the very gravamen of the crime with which she was charged." (*Ibid*.)

In this case, as did the expert in *Stamps*, Rienhardt told the jury he identified the contents of the tablets taken from defendant by comparing their appearance with information in a database. We respectfully disagree with *Stamps,* however, that the

---

them below]; *Conservatorship of K.W.* (2017) 13 Cal.App.5th 1274, 1283 [failure to make objection at trial did not forfeit *Sanchez* claim on appeal where objection "would have been clearly, and correctly, overruled"]; see *In re Ruedas* (May 24, 2018, G054523) ___ Cal.App.5th ___ [2018 Cal.App. Lexis 483] [concluding *Sanchez* announced a new rule of law for purposes of retroactivity analysis and disagreeing with *Perez* to the extent applicable to retroactivity].) We follow our approach in *Jeffrey G.* and conclude defendant's *Sanchez* claim was not forfeited.

expert's testimony was inadmissible.  As we will explain, Rienhardt's testimony comprised two distinct parts.  His testimony about the appearance of the pills, though case specific, was not hearsay because it was based on his personal observation.  His testimony about the database, while hearsay, was not case specific, but the type of general background information which has always been admissible when related by an expert.  Thus, under our reading of *Sanchez,* both parts of Rienhardt's testimony were admissible.

We begin our analysis with the explanation offered by our high court:  "The hearsay rule has traditionally not barred an expert's testimony regarding his general knowledge in his field of expertise. '[T]he common law recognized that experts frequently acquired their knowledge from hearsay, and that "to reject a professional physician or mathematician because the fact or some facts to which he testifies are known to him only upon the authority of others would be to ignore the accepted methods of professional work and to insist on . . . impossible standards." Thus, the common law accepted that an expert's general knowledge often came from inadmissible evidence.' [Citations.]  Knowledge in a specialized area is what differentiates the expert from a lay witness, and makes his testimony uniquely valuable to the jury in explaining matters 'beyond the common experience of an ordinary juror.'  [Citations.]  As such, an expert's testimony concerning his general knowledge, even if technically hearsay, has not been subject to exclusion on hearsay grounds.

"By contrast, an expert has traditionally been precluded from relating *case-specific* facts about which the expert has no independent knowledge.  Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried.  Generally, parties try to establish the facts on which their theory of the case depends by calling witnesses with personal knowledge of those case-specific facts.  An expert may then testify about more generalized information to help jurors understand the significance of those case-specific facts.  An expert is also allowed to give an opinion about what those facts may mean.  The expert is generally not permitted, however, to

8

supply case-specific facts about which he has no personal knowledge." (*Sanchez, supra,* 63 Cal.4th at p. 676.)

In our view, the only "case-specific" fact here concerned the markings Rienhardt saw on the pills recovered from defendant. (*Sanchez, supra,* 63 Cal.4th at p. 676 ["Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried."]; *People v. Meraz* (2016) 6 Cal.App.5th 1162, 1174–1175, review granted Mar. 22, 2017, S239442, opinion ordered to remain precedential.) His testimony about the appearance of the pills was not hearsay, however, because it was based on his personal observation. (See *Sanchez*, at pp. 675, 685 [experts can relate and rely on information within their personal knowledge]; *People v. Vega-Robles* (2017) 9 Cal.App.5th 382, 413 [gang expert could testify regarding case-specific facts about which he had personal knowledge]; *People v. Iraheta* (2017) 14 Cal.App.5th 1228, 1248 [police officers' testimony regarding tattoos and descriptions of gang activity based on their personal knowledge was not hearsay].)

The information in the database, on the other hand, was not about the specific pills seized from defendant, but generally about what pills containing certain chemicals look like.[8] Though it is clearly hearsay, it is the type of background information which has always been admissible under state evidentiary law.[9] (*Sanchez, supra,* 63 Cal.4th at pp. 676, 685 ["experts . . . can rely on background information accepted in their field of

---

[8] Indeed, defendant appears to acknowledge as much in his opening brief when he states in a footnote to a different argument: "[I]t is important to remember that the truth of the matter asserted in the database is only that a pill bearing a certain insignia purports to contain a specific chemical. It does not assert as a truth that any particular pill bearing that insignia actually does contain a specific chemical."

[9] We express no opinion on the reliability of the database or the expert's use of the database to identify the pills. Rienhardt testified his method was the generally accepted method for testing in the scientific community, and defendant did not object or explore the issue on cross-examination. In any event, the jury was free to reject Rienhardt's testimony if it found his opinion unreliable. (*Sanchez, supra*, 63 Cal.4th at p. 675 [jury may reject expert's opinion if it is "unsound, based on faulty reasoning or analysis, or based on information the jury finds unreliable"].)

expertise under the traditional latitude given by the Evidence Code"]; Evid. Code, §§ 801, subd. (b) [expert may testify as to matter personally known to expert or made known to him or her before the hearing that is of a type on which expert may rely], 802 [expert may relate kind and source of "matter" upon which opinion rests].) As *Sanchez* explained, "an expert's background knowledge and experience is what distinguishes him from a lay witness, and . . . testimony relating such background information has never been subject to exclusion as hearsay, even though offered for its truth. Thus, our decision does not affect the traditional latitude granted to experts to describe background information and knowledge in the area of his expertise." (*Id.* at p. 685.) Much as a physician might testify he or she consulted a treatise to identify a patient's medical condition, Rienhardt consulted the database to reach an opinion about the chemical content of the pills he examined, and told the jury he did so. That was perfectly permissible.

In further support of this analysis, we look to one of several examples given in *Sanchez* to clarify the distinction between general background information and case-specific hearsay. The Supreme Court explained the fact that an associate of the defendant had a diamond tattoo would be a case-specific fact that could be established by a witness with personal knowledge or a photograph. (*Sanchez, supra,* 63 Cal.4th at p. 677.) That a particular gang had adopted the diamond as a symbol would be background information about which an expert could testify. The expert could then opine that the presence of the tattoo shows the person belongs to that gang. (*Ibid.*) Similarly, here, the markings on the pills taken from defendant were case-specific facts about which Rienhardt had personal knowledge. The information from the database that pills with those markings contain alprazolam was background information he could convey to the jury. In turn, the conclusion the pills defendant possessed contained alprazolam was not case-specific hearsay, but the proper subject of the expert's opinion.

Because we determine Rienhardt's testimony was not case-specific hearsay, we need not reach the Attorney General's arguments (1) the testimony was admissible under

10

the exception for a published list or compilation or (2) any *Sanchez* error was harmless under the circumstances of this case.

### 4. *Substantial Evidence*

Defendant also contends the trial court erred in denying defendant's section 1118.1 motion for acquittal of the possession of alprazolam count because Rienhardt's opinion the tablets contained alprazolam was not substantial evidence. Specifically, defendant asserts Rienhardt assumed the tablets were not counterfeit and were produced by a pharmaceutical company that followed Federal Food and Drug Administration (FDA) regulations, an assumption unsupported by evidence in the record.

On review of a challenge to the sufficiency of the evidence, the relevant inquiry " 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*Ibid.*)

Circumstantial evidence is sufficient to establish the essential elements of possession of a controlled substance. (*People v. Mooring* (2017) 15 Cal.App.5th 928, 943.) Here, Rienhardt, a drug identification expert, testified the pills contained alprazolam based on his visual inspection and comparison to information in a database, a method that was generally accepted in the scientific community. Sergeant Simmont, who had extensive training and experience in narcotics investigations, also described the tablets as Xanax. Further, defendant told Simmont he took the "Xanibar" pills "[e]very day" until he "feel[s] good." Taken together, such evidence was sufficient circumstantial evidence the pills contained alprazolam.

On cross-examination, Rienhardt admitted he assumed the markings on the pills were made by the FDA or the pharmaceutical company, but he did not actually know who put them there. Defendant points to that testimony and argues counterfeit drugs are typically sold on the street to users who suspect they are real, and accordingly, Rienhardt's opinion was not substantial evidence. But defendant cites no evidence the pills were purchased on the street, nor was a "counterfeit pills" theory argued at trial. The jurors apparently rejected as unreasonable an inference that the pills were other than what they appeared to be, and on this record, that was a rational determination supported by sufficient circumstantial evidence.

## III. DISPOSITION

The judgment is affirmed.

_____
Margulies, J.

We concur:


_____
Humes, P.J.


_____
Banke, J.

A150689
*People v. Veamatahau*

13

Trial Court:   San Mateo County Superior Court

Trial Judge:   Hon. Barbara J. Mallach

Counsel:

Avatar Legal, Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and Huy T. Luong, Deputy Attorneys General for Plaintiff and Respondent.