Filed 12/10/25  P. v. Lopez CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081552 |
| v. | (Super.Ct.No. FSB1400030) |
| JOSE MARTIN LOPEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ronald M. Christianson, Judge.  Affirmed and remanded with directions.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, James M. Toohey and Jon S. Tangonan, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2016, Jose Martin Lopez pled guilty to one count of attempted murder and admitted that he personally and intentionally discharged a firearm in the commission of the offense. (Pen. Code, §§ 187, 664, 12022.53, subd. (c); unlabeled statutory references are to this code.) In 2022, Lopez filed a petition to vacate his attempted murder conviction under section 1172.6. Relying on the testimony presented at the preliminary hearing and Lopez's admission of the firearm discharge enhancement, the trial court summarily denied the petition on the ground that Lopez was the direct perpetrator.

On appeal, Lopez argued that the trial court erred by making an impermissible credibility determination about the preliminary hearing testimony and by misconstruing the legal import of the firearm enhancement. In a prior unpublished opinion, we agreed and concluded that Lopez's petition sufficiently alleged a prima facie case for relief and that the record of conviction did not contain facts refuting the allegations. We consequently reversed the order denying the petition and remanded with directions to issue an order to show cause.

The Supreme Court granted review, vacated our prior opinion, and transferred the matter back to us with directions to reconsider the matter in light of *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*). *Patton* held that in determining whether a petitioner has demonstrated prima facie entitlement to resentencing relief under section 1172.6, a court may "rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations." (*Patton*, at p. 564.)

Lopez now argues that even though the trial court could consider the preliminary hearing transcript at the prima facie stage, (1) the trial court still could not rely on hearsay evidence admitted at that hearing, and (2) the nonhearsay evidence does not establish that he was the sole and direct perpetrator of the shooting. We disagree on the second point, which is dispositive. The admissible evidence shows that Lopez was prosecuted and convicted on the still-valid theory that he was the sole perpetrator of the attempted murder. But we grant Lopez's request to remand the matter with directions to allow him to file an amended petition in light of *Patton*.

BACKGROUND

In 2016, the San Bernardino County District Attorney charged Lopez by amended information with the premeditated attempted murder of Kent Patrick Hay on New Year's Eve in 2013. (§§ 664, 187, subd. (a).) The information also alleged that Lopez committed one count of shooting from a motor vehicle (§ 26100), along with three firearm enhancements as to both counts—personal use of a firearm (§ 12022.53, subd. (b)), personal and intentional discharge of a firearm (§ 12022.53, subd. (c)), and personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)).

At the preliminary hearing, four police officers testified for the People. No witnesses testified for the defense. Officer Michele Mahan spoke with Kent in the hospital one week after the shooting. Kent was hooked up to various machines and had a tracheotomy but was able to speak. He described what happened on New Year's Eve in 2013 as follows: As he and his brother, Kevin B., were walking in a grocery store

3

parking lot toward the store entrance, the driver of a fancy red truck stopped and yelled something at them. Neither brother responded. The brothers went inside the store, exited about five minutes later, and walked to Kent's car. As they were entering the vehicle, the same red truck pulled up, and the driver yelled something at them; Kevin responded that they did not want any trouble. While Kent was standing next to the open driver's side door, he heard a gunshot and felt something strike the side of his face. He saw the driver of the truck and did not know him. Another officer testified about the extent of the injuries that Kent had sustained from the gunshot wound, as reported to the officer by Kent several months after the shooting.

Officer Shaun Sandoval was the first officer to arrive at the scene. When Sandoval arrived, Kent was "extremely distraught," and Kevin was standing at his side. When Sandoval first arrived, he attempted to talk to Kevin, but Kevin was too "distraught at that exact moment." Sandoval subsequently spoke with Kevin after Kent received medical attention.

According to Kevin, he and Kent walked in front of a red SUV in the parking lot while heading toward a grocery store entrance. The driver of the SUV said "East Side" to them, and Kevin and Kent continued into the grocery store and were inside for about five minutes. After leaving the store, Kent and Kevin went to their car in the parking lot. As Kent was attempting to enter the driver's side front door and Kevin stood at the front passenger door, a red SUV pulled up behind Kent. Kevin said that the driver was the only person inside the SUV. Kevin heard a single gunshot and saw the red SUV speed

4

out of the parking lot. He described the vehicle as a red SUV with a black roof and large black rims. Kevin saw the driver but did not recognize him. Kevin said that the driver was a Hispanic adult male and was wearing a light grey sweatshirt.

Sandoval also spoke with two eyewitnesses who were in the parking lot. Both described hearing a gunshot and seeing a red SUV leave the lot at high speed immediately after the shot.

Sandoval was advised of a nearby traffic stop involving a potential suspect, so he took Kevin and the two eyewitnesses to the scene of the traffic stop to conduct an in-field identification. The traffic stop was approximately three miles away from the grocery store. All three witnesses identified the vehicle as the one that they had observed in the grocery store parking lot. Kevin identified the driver of the vehicle, saying "Yeah, that's him."

Officer Martin Hysen testified about the SUV involved in the traffic stop. When Hysen arrived at the scene of the traffic stop, he saw a "reddish color SUV with large black rims," and the suspect was removed from the SUV. Hysen identified Lopez as the person who had been removed from the SUV. Hysen searched the SUV and found a nine-millimeter shell casing on the front passenger's seat and a nine-millimeter handgun in an open, unzipped backpack behind the driver's seat. The handgun and the shell casing matched.

While jury selection was underway, Lopez pled guilty to attempted murder without premeditation and to the firearm discharge enhancement under section 12022.53,

subdivision (c).  He was sentenced to the agreed term of 29 years in state prison.  The parties stipulated that the preliminary hearing transcript provided a factual basis for the plea.

In 2022, Lopez filed a form petition to vacate his attempted murder conviction under section 1172.6.[1]  Lopez checked boxes next to statements asserting that (1) an information had been filed against him that allowed the prosecution to try him for attempted murder under the natural and probable consequences doctrine; (2) he accepted a plea offer in lieu of a trial at which he could have been convicted of attempted murder; and (3) he could not presently be convicted of attempted murder because of changes to accomplice liability for murder made by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  Lopez did not offer any additional facts in support of those statements.

The People opposed the petition on the ground that the record of conviction demonstrated that Lopez was the direct perpetrator and was therefore ineligible for relief, because he could be convicted of attempted murder under a still-valid theory of liability. They argued that the evidence presented at the preliminary hearing and Lopez's admission of the firearm discharge enhancement established that he "was convicted as the actual killer" and not under any theory of accomplice liability.

At the hearing, the court asked Lopez's appointed counsel whether she planned to respond to the People's opposition, and counsel replied that she was submitting on the

---

[1]     The form petition erroneously cites section 1172.7, but the substance of the petition makes clear that it seeks relief under section 1172.6.

6

petition. The court took the matter under submission and issued its ruling at a subsequent hearing. The court summarized the officers' testimony from the preliminary hearing and concluded that the testimony established that Lopez "was prosecuted solely on the theory that he was the actual shooter in the attempted murder." The court further concluded that the firearm discharge enhancement "coincide[d] with that theory." On the basis of those conclusions, the court determined that Lopez failed to make a prima facie case for relief and summarily denied the petition.

DISCUSSION

In his supplemental brief following transfer from the Supreme Court, Lopez argues that the trial court's ruling was erroneous because he sufficiently alleged a case for relief and the record of conviction does not contain facts refuting the allegations of his petition. In particular, he contends that the trial court could not rely on hearsay evidence from the preliminary hearing and that the admissible evidence from that hearing, along with the remainder of the record of conviction, does not refute his prima facie showing of entitlement to relief.[2] We are not persuaded.

Senate Bill 1437 amended section 188 to provide that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) One consequence of that amendment is that the natural and probable consequences doctrine has been eliminated as a theory of liability for attempted murder.

---

[2] Lopez also argues that *Patton* was wrongly decided. We are bound by Supreme Court precedent and must therefore reject that argument. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

7

(*People v. Muhammad* (2024) 107 Cal.App.5th 268, 275.)

Section 1172.6 provides a procedural mechanism for retroactive application of the amended law to defendants who were convicted of attempted murder under prior law. (§ 1172.6.) The process begins with the filing of a petition and declaration stating that the petitioner meets the following requirements: "First, the charging document allowed the prosecution to 'proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine.' ([§ 1172.6], subd. (a)(1).) Second, petitioner was convicted of the attempted murder charge or accepted a plea offer in lieu of trial on such a charge. (*Id.*, subd. (a)(2).) And third, 'petitioner could not be presently convicted' of the charge, given the changes to homicide law effective in 2019. (*Id.*, subd. (a)(3).)" (*Patton*, *supra*, 17 Cal.5th at p. 558.)

After allowing the parties to file opposition and reply briefs, the trial court determines whether the petitioner has made a prima facie showing of entitlement to relief. (§ 1172.6, subd. (c).) In general, the court must assume the truth of the petition's allegations unless they are refuted by facts reflected in the record of conviction. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) *Patton* further held that if a petition is supported only by "conclusory, checkbox allegations" and the preliminary hearing transcript contains "unchallenged, relief-foreclosing facts," then the petition may be denied on that basis at the prima facie stage. (*Patton*, *supra*, 17 Cal.5th at p. 564.)

"If the 'petitioner makes a prima facie showing,' then the trial court issues an order to show cause and holds 'a hearing to determine whether to vacate the . . .

8

conviction and to recall the sentence and resentence the petitioner.' ([§ 1172.6], subds. (c), (d)(1).) At this hearing, evidence may be presented and 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of . . . attempted murder under' current law." (*Patton*, *supra*, 17 Cal.5th at p. 559; § 1172.6, subd. (d)(3) (section 1172.6(d)(3)).) The admission of evidence at that hearing "shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6(d)(3).) "However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 [of the Penal Code] shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (*Ibid.*) Subdivision (b) of section 872 (section 872(b)) permits certain law enforcement officers to testify at a preliminary hearing to "the statements of declarants made out of court offered for the truth of the matter asserted."

Whether the record of conviction demonstrates that a petitioner is ineligible for relief "'is a purely legal conclusion, which we review de novo.'" (*People v. Ervin* (2021) 72 Cal.App.5th 90, 99, 101.)

Lopez has failed to make a prima facie showing of entitlement to relief under section 1172.6. Like the petitioner in *Patton*, Lopez filed a petition for resentencing under section 1172.6 "[o]n a preprinted form" in which " he checked boxes next to statements indicating that he met the statutory conditions for relief found in section

9

1172.6, subdivision (a)(1) through (a)(3) and that he wanted court-appointed counsel to represent him." (*Patton*, *supra*, 17 Cal.5th at p. 559.) And he "offered no specific facts in support of these statements." (*Ibid.*) The trial court therefore could "rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute [those] conclusory, checkbox allegations." (*Id.* at p. 564.)

Lopez argues that "section 1172.6's limitation on considering hearsay admitted at the preliminary hearing under section 872, subdivision (b), at an evidentiary hearing also applies at the prima facie review stage." The People disagree. *Patton* did not address the issue, because the appellate court had disregarded any testimony admitted under section 872(b). (*Patton*, *supra*, 17 Cal.5th at p. 557 & fn. 2.) We also need not resolve the issue.

We assume for the sake of argument that the limitation applicable at the evidentiary hearing on the consideration of hearsay evidence admitted under section 872(b) at the preliminary hearing also applies to consideration of such evidence at the prima facie stage. We accordingly limit our discussion to the nonhearsay evidence admitted at the preliminary hearing and any hearsay evidence admitted under section 872(b) that was "admissible pursuant to another exception to the hearsay rule." (§ 1172.6(d)(3).)

Hysen's testimony about the scene of the traffic stop was based on his personal observation and therefore was not hearsay admitted under section 872(b). (Evid. Code, § 702; *People v. Veamatahau* (2018) 24 Cal.App.5th 68, 73.) Likewise, Sandoval's description of the crime scene when he arrived, his conduct at the crime scene, and

Mahan's description of Kent's condition in the hospital were based on the officers' personal observation and thus also not hearsay. (*Veamatahau*, at p. 73.)

In contrast, Sandoval's testimony about Kevin's account of the shooting was hearsay admitted under section 872(b). But that testimony was also admissible under the spontaneous statement exception to the hearsay rule. (Evid. Code, § 1240.)

"Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.) "For an out-of-court statement to fall within the spontaneous statement exception to the hearsay rule, '"(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it."'" (*People v. Mataele* (2022) 13 Cal.5th 372, 410 (*Mataele*).) Statements elicited by law enforcement officers' questions can still be spontaneous. (*People v. Alvarez* (1996) 14 Cal.4th 155, 185-186; *People v. Saracoglu* (2007) 152 Cal.App.4th 1584, 1588-1590 (*Saracoglu*).) "'The crucial element in determining whether a declaration is sufficiently reliable to be admissible under this exception to the hearsay rule is . . . the mental state of the speaker.'" (*Mataele*, at p. 411.)

11

When Kent was shot, Kevin was standing near him, just on the other side of the car. Kevin was too distraught to speak with Sandoval when Sandoval first arrived at the scene, before Kent had received any medical attention. Sandoval then spoke with Kevin after Kent received medical attention. The fact that Kevin was initially too distraught to speak with Sandoval supports the inference that witnessing his brother get shot in the head was "startling enough to produce [a] nervous excitement and render the utterance spontaneous and unreflecting." (*Mataele*, *supra*, 13 Cal.5th at p. 410.) The preliminary hearing testimony does not specify how much time elapsed between Sandoval's arrival and Kevin's statements to him. But given that Sandoval spoke with Kevin at the scene after Kent received medical attention, not enough time had passed for Kevin to reflect and deliberate and thus render the statements not spontaneous. (See *Saracoglu*, *supra*, 152 Cal.App.4th at p. 1589 [statements to officers made within 30 minutes of exciting event spontaneous]; *People v. Brown* (2003) 31 Cal.4th 518, 541 [two and one-half hours]; *In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1713 [one to two days].) We accordingly conclude that Kevin's statements to Sandoval at the crime scene were admissible as spontaneous declarations under Evidence Code section 1240. Sandoval's preliminary hearing testimony concerning those statements therefore satisfies the requirements of section 1172.6(d)(3).

The admissible testimony of Hysen, Sandoval, and Mahan demonstrates that Lopez was prosecuted solely on the theory that he was the actual shooter. Kevin told Sandoval that the shooter was driving a red SUV with large black rims. Kevin said that

12

the driver was the only person inside the SUV when Kent was shot. Hysen identified Lopez as the person detained at a traffic stop of a reddish SUV with large black rims about three miles away from the scene of the shooting. Hysen found a spent nine-millimeter shell casing on the front passenger seat of the SUV and a matching nine-millimeter handgun in an open backpack behind the driver's seat. The evidence thus establishes that the SUV at the traffic stop was the same SUV involved in the shooting and that Lopez was the person who shot Kent. The record contains no evidence that there was more than one participant in the crime. The record of conviction thus contains undisputed evidence that Lopez was the sole and direct perpetrator of the shooting.

In addition, as the Supreme Court noted in *Patton*, Lopez's admission of the section 12022.53, subdivision (c), enhancement for intentional discharge of a firearm in the commission of the attempted murder "tend[s] to corroborate this view." (*Patton*, *supra*, 17 Cal.5th at p. 563.) Thus, the unchallenged, admissible evidence at the preliminary hearing and the admission of the firearm enhancement together refute Lopez's conclusory, checkbox allegation in his section 1172.6 petition that he could not be convicted under a now-valid theory of attempted murder liability, because he was already convicted under a now-valid theory.

Lopez requests, however, that we grant him the same relief that the Supreme Court granted in *Patton*, namely, that we give him the opportunity "to plead additional facts on remand should we affirm." (*Patton*, *supra*, 17 Cal.5th at p. 569.) We grant the request and accordingly "order a remand to the superior court with directions for that court to

13

consider an amended petition should [Lopez], within 30 days of that remand, seek to file one." (*Id.* at pp. 569-570.)

DISPOSITION

The matter is remanded to the superior court with directions to give Lopez 30 days to file an amended petition. The order denying Lopez's petition is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.